## LENA FRICK, Respondent, v. KANSAS CITY, Appellant; F. C. YOUMANS, Defendant.

### Kansas City Court of Appeals, April 2, 1906.

1. **EVIDENCE: Expert Opinion: Qualification.** In an action for damages to premises, the plaintiff was asked if she knew what it would cost to make the repairs. She answered affirmatively and gave the amount. *Held*, she qualified herself to give an opinion and defendant could cross-examine her as to her means of knowledge.

2. ———: **Incompetent: Instruction.** Where an instruction excludes from the consideration of the jury the assessment of damages after signing a certain petition, evidence relating to the representations upon which plaintiff signed the petition, however incompetent, is rendered harmless.

3. **TRIAL PRACTICE: Reply: Trial.** Where the trial proceeds on the theory that the matter of the answer was in issue, the objection that no reply was filed to such matter comes too late.

4. **MUNICIPAL CORPORATIONS: Temporary Use of Street: Sewer Construction.** In the construction of a sewer, the city and its contractor have a right to pile the dirt in a public thoroughfare, which right may be exercised within reasonable bounds, since the property-owners and the traveling public are expected to suffer such inconvenience or even damage.

5. ———: **Nuisance: Sewer Construction: Vacant Lot: Action.** The city in constructing a sewer may pile the dirt, with the owner's consent, upon a vacant lot and if it acts with reasonable diligence in its removal the adjoining lotowner may not complain.

6. ———: ———: ———: **Surface Water: Action.** The city in the construction of a sewer cannot pile the dirt in front of the property-owner and on the adjoining vacant lot so as to form a pocket and collect the surface water, throwing it back upon the dominant estate, flooding the same, especially where slight care would provide proper drainage.

7. ———: ———: **Constructing Street: Necessity: Diligence.** A municipality's right to obstruct a street in the construction of a sewer is derived solely from necessity and ceases with it; and the duty to act with diligence in removing the dirt from the street begins with the knowledge that it will not be used in the work.

8. ——: ——: Negligence: Contractor. Negligence is not a necessary element of a nuisance; and a city may be liable for a nuisance in a street on the ground of its public control over the streets and its right of supervision over the work, although the acts complained of were committed by the contractor.

9. DAMAGES: Measure of: Nuisance: Injury to Real Estate: Rental Value. The loss to rental value of injured property may be an element of damages and in some cases the sole element; but the basic principle in nuisance cases as in other cases of tort is adequate compensation for the injury directly resulting from the nuisance to the commencement of the suit.

10. ——: General and Special: Allegation. An owner has the right to the undisturbed enjoyment of his property and may remain in the occupation thereof when this right is invaded, even though there is possible danger to him therein; and the full responsibility for consequences is upon the wrongful invader, and the owner can plead, prove and recover special damages.

11. ——: ——: Evidence. On consideration, *held*, that the proof was not deficient in regard to elements of special damages alleged.

·Appeal from Jackson Circuit Court.—*Hon. Andrew F. Evans,* Judge.

AFFIRMED.

*Edwin C. Meservey* and *W. H. H. Piatt* for appellant.

(1) Improper evidence was admitted on behalf of plaintiff. (2) Proper evidence offered by defendants was excluded by the court. (3) The demurrer offered by appellant at the close of respondent's testimony should have been sustained, and the appellant, under the pleadings and upon the record, was entitled to a judgment. (4) Improper and illegal instructions were given on behalf of the plaintiff. See authorities *infra.* (5) Proper and legal instructions, asked by the defendants, were refused by the court. Goettenetroeter v. Kappleman, 83 Mo. App. 290; 1 Joyce on Damages, sec.

220; 21 Am. and Eng. Ency. Law (2 Ed.), 727; Pinney v. Berry, 61 Mo. 234; Bungenstick v. Nishnabotna, 163 Mo. 189; Mamerberg v. Railroad, 62 Mo. App. 563; Rhodes v. Nevada, 47 Mo. App. 498; Slaughter v. Railroad, 116 Mo. 269; Evans v. Joplin, 76 Mo. App. 20; Smith v. Railroad, 108 Mo. 244; Brake v. Kansas City, 100 Mo. App. 611; Duke v. Railroad, 99 Mo. 351; Birch v. Benton, 26 Mo. 153; Speaker v. McKenzie, 26 Mo. 255; 8 Am. and Eng. Ency. of Law, p. 551.

*Ralph E. Scofield* and *W. W. Garnhart* for respondent.

(1)   Respondent testified that it would cost $15 to repair the foundation of the house. Respondent at least partially qualified herself for such testimony, besides her means of knowledge was a proper subject for cross-examination, as where a witness testifies as to the value of an article.   Bowne v. Ins. Co., 46 Mo. App. 473.   (2) The objection urged by appellant that witness Ward was not allowed to testify as to the dirt being piled on vacant lots, adjoining respondent's property, is without merit, for upon examination of respondent's instructions, it will be observed that the jury were not allowed to award damages for dirt piled upon said vacant lots.   (3) The objection that the demurrer interposed by appellant at the close of respondent's case, should have been sustained, is without merit.   Bowen v. Railroad, 95 Mo. 275; Howell v. Reynolds County, 51 Mo. 156; Smith v. Joseph, 45 Mo. 449; Henslee v. Cannefor, 49 Mo. 295; F. & M. Co. v. Harlan, 72 Mo. 203; State v. Williams, 77 Mo. 469; Vanderline v. Smith, 18 Mo. App. 59.   (4) To state respondent's position in different language, "When the amount of plaintiff's damages is not susceptible of mathematical proof — as in the case of an injury to health or comfort — it is neither necessary nor proper that he should prove that he has been damaged in any specific sum, but the question as to the amount to which

he is entitled is one for the determination of the jury in the exercise of their sound discretion, in view of all the facts proved." Am. and Eng. Ency. of Law (2 Ed.), p. 729; Berlin v. Thompson, 61 Mo. App. 234. (5) In such case the true rule as to the damage suffered, must be to submit the same to the sound discretion of the jury in view of all the facts proved. Berlin v. Thompson, supra; Smith v. McConathy, supra; Bungenstock v. Drainage District, 163 Mo. 198.

JOHNSON, J. — Action for damages alleged to have been caused by a private nuisance. In October, 1902, the defendant Youmans as contractor with the defendant city and under its direction began the construction of a public sewer along the midway of Mersington avenue in Kansas. City. Plaintiff owned and occupied, as her residence, property fronting on that thoroughfare situated on the west side thereof between Sixteenth and Seventeenth streets. The lot was forty-eight feet wide and about one hundred and twenty-five feet deep, and at the time of injury was surrounded by a good picket fence, and was covered by blue grass turf and adorned with shrubbery. The dwelling-house situated thereon was a three-room cottage supported by a good foundation and provided with a cemented cellar. The property was in good repair and the natural drainage was sufficient to preserve it from the inroads of surface water. The excavation made for the sewer in front of plaintiff's property was about twenty-three feet deep and twelve feet wide. Dirt removed from it was piled by the contractor along the west side of the street in front of plaintiff's property to a height of five or six feet. The embankment thus formed extended over the property line, practically destroyed the front fence and entirely shut off the passageway between the property and the street. Immediately north of plaintiff's property was a vacant lot, upon which the contractor placed a large quantity of dirt taken from the trench. This raised an

embankment near plaintiff's north line and as the natural drainage of surface water was towards the north these banks on the east and north served to collect and throw back over plaintiff's lot surface water produced by rains. The water heavily charged with dirt received from the erosions of the banks deposited clay over the surface of the lot after every considerable rain and invaded the cellar depositing clay upon the floor thereof at times to a depth of six or eight inches. The turf and shrubbery on the lot were completely ruined; the foundation of the house damaged; the whole house made damp and unwholesome. Plaintiff was put to the trouble and annoyance of having to remove mud from the cellar after every rain, was deprived of its use and could reach the street from her house only by making a detour from the back end of her lot through a neighbor's yard. These conditions continued for a period of a year. There is evidence that plaintiff objected while the work was in progress to being thus hemmed in and as her annoyances and injuries developed made several ineffective complaints to both defendants. After the lapse of several months, in March, 1903, defendants furrowed a shallow ditch along her south line, that partially checked the inrush of surface water from that direction, but did not materially lessen the damage inflicted by heavy rains. In June, 1903, plaintiff was informed that the city intended to grade Mersington avenue and, as a fill in front of her property would be required to bring the street to the established grade, she signed a petition presented by a neighbor, as follows: "We, the undersigned owners of property on both sides of Mersington street between Sixteenth and Seventeenth streets, do hereby petition you to allow the dirt now in said street to remain there in order that we may make use of the same in grading."

The dirt was suffered to remain until the following October, but the street was not graded. There is evidence tending to show that the completion of the sewer was unreasonably delayed and that after it was laid and

filled in in front of plaintiff's property the embankments that damaged plaintiff, which were not drawn upon for refilling the excavation, had remained an unreasonable length of time before plaintiff signed the petition.

In the petition plaintiff alleged "that said dirt was piled through the fence and on to the property of plaintiff, breaking the fence in many places and ruining the yard; that said dirt so obstructed the natural flow of surface water as to cause the same, mixed with mud and dirt, to flow over plaintiff's lot and into the cellar of plaintiff's dwelling-house to the depth of nearly a foot over the entire cellar floor; that plaintiff has been compelled repeatedly to clean out said cellar, removing each time nearly a foot of mud; that plaintiff has been unable to use the said cellar or to enjoy her said yard, and said dwelling-house has been rendered unsanitary and unfit to be used as a dwelling . . . plaintiff's property was entirely cut off from the public street and access to said property made impossible except by climbing over a dirt embankment five feet high . . . that said street in front of plaintiff's property is impassable; that her said property is made almost uninhabitable by the said negligence of said defendants and has been damaged in the sum of one thousand dollars," etc.

On the measure of damage, the court at the request of plaintiff instructed the jury as follows:

"The court instructs the jury that if you find a verdict for the plaintiff, in assessing her damages, you will take into account all injuries, if any, to plaintiff's house, as shown by the evidence, to the foundation of the dwelling-house thereon and to the walls thereof, and for all expense necessarily incurred by plaintiff, if any, in carrying out the dirt and mud and water (if you so find)."

"The court further instructs the jury that if you find a verdict for the plaintiff, in assessing her damages, you will take into account all injuries, if any, sustained by her, by being deprived of the right of egress and in-

gress, to and from said street, and to the inconvenience suffered by plaintiff, if any, in consequence of the same, to the time of the signing and delivery of said written consent, and all injuries suffered by plaintiff, if any, by being deprived of the quiet and peaceable possession of the premises in question herein, to said last-named date; and you will return a verdict for the plaintiff in such sum, not exceeding one thousand dollars ($1,000), as you believe and find from the evidence will fairly and fully compensate plaintiff for such injuries."

Plaintiff recovered judgment in the sum of $325 and the defendant city alone appealed.

Several objections are made to the rulings of the learned trial judge upon the admissibility of evidence offered, none of which, we think, is well taken. Plaintiff, when on the stand, was asked by her counsel if she knew what it would cost to repair the damage done to the foundation wall. She answered, "Yes, sir," and then stated what it would cost. The objection made was that "the witness hasn't shown any knowledge of that sort of work." Conceding defendant's claim that the question called for opinion evidence, plaintiff's answer that she knew the value of the work, in the absence of contradictory evidence, qualified her to testify as an expert. Defendant could have examined her touching her means of knowledge, but did not, and we must assume in this state of the evidence that she possessed the requisite information to qualify her.

Plaintiff, over the objection of defendant, was permitted to testify concerning representations made to her to induce her signature to the petition asking that the dirt be left in the street for grading purposes as follows: "Q. At the time of the signing of this petition, was there any representation made to you as to how long that dirt should be left in the street? A. For two or three weeks." As the instructions expressly excluded from the consideration of the jury any damage that accrued after plaintiff signed that petition, defendant could not

have been injured by the testimony, had error been committed in receiving it.

The other objections of this nature appear to be equally devoid of merit and will not be specially noticed.

Nor is there any merit in the contention of defendant that is based upon the alleged failure of plaintiff to reply to the affirmative defense pleaded by the city in its answer. The case was tried by both parties and the court upon the assumption that the defense was in issue and therefore the objection comes too late.

Passing now to the merits of the case, the defendants in the construction of the sewer along the street had the right to the temporary use thereof for the piling thereon of dirt taken from the excavation. The right to so use a public thoroughfare springs from necessity and its exercise within reasonable bounds and in a reasonably careful manner is as legitimate and lawful as is the use of the street for any other lawful purpose. Property-owners as well as the traveling public must expect to suffer the inconvenience and even damage occasioned by the presence of such obstructions.

And further defendant had the undoubted right to pile dirt taken from the excavation upon the vacant lot north of plaintiff's property with the consent of the owner of that lot and it may be said that, had defendants observed the degree of care required of them in raising the embankments in the street and on the vacant lot, and had they acted with reasonable diligence in the removal of the dirt from the street when it became apparent that it was not needed for refilling, plaintiff would have had no cause of action for any damage inflicted upon her property or any inconvenience or annoyance incurred by her in consequence of the presence of the embankments.

But the record abounds with evidence showing that defendants did not exercise their lawful right in a reasonable manner, but unreasonably, and even oppressively inflicted damage upon her property and subjected her

unnecessarily to great inconvenience and even danger of illness. No reason is apparent for the entire deprivation of her means of ingress and egress. It would have been a very easy matter to have left a passageway open to her. There was, if possible, even less reason for making a pocket of the two embankments that would collect the surface water and precipitate it in volume upon her property. The argument that surface water is a common enemy that everyone must fight as best he may does not avail to excuse defendant. They had no right to wantonly collect it by the aid of a dam erected upon servient property and throw it back in destructive quantities upon the dominant property, and this is especially true in view of the fact that by the exercise of slight care they could have provided for the drainage of the water.

Further, it appears from the testimony introduced by defendants that when the dirt was piled in the street in front of plaintiff's property, defendants knew it would not be used for refilling, as dirt sufficient for that purpose was piled on the east side of the trench. Defendant's right to obstruct the street, derived solely from necessity, ceased with the necessity that gave it birth and with the knowledge that the dirt in question would not be used in the work began the duty of defendant to act with reasonable diligence to remove it from the street. Its neglect to perform this duty indisputably appears from the conceded facts.

The formation and maintenance of these embankments, as detailed, constituted a private nuisance that continued from October, 1902, to June, 1903, when plaintiff signed the petition mentioned and defendants are liable to plaintiff for her damage that directly resulted from such nuisance.

Relative to the suggestion that the defendant city should not be held liable because the evidence fails to show that it was negligent, the acts complained of all being those of the contractor, it suffices to say that negligence is not a necessary element of nuisance. And the

liability of the city may be sustained upon the ground that its control over the public streets and the right of supervision, which the evidence shows it exercised over the work in question, charged it with the duty not to erect a private nuisance, nor to permit the continuance of one erected by the contractor. The power to abate a nuisance of the latter class carried the duty to abate it and the gravamen of plaintiff's cause of action is not the negligence by which the nuisance may have been created, but the fact that such nuisance was created and maintained in violation of the city's duty to plaintiff. The demurrer to the evidence was properly overruled.

Complaint is made of the instructions relative to the measure of damages. First, it is said that plaintiff's recovery should have been restricted to the damage to the rental value of the property inflicted by the nuisance during the period of its continuation. The loss to the rental value of the injured property may be an element of damage and in some cases the sole element. But the basic principle to be followed in the measurement of damages in nuisance cases is that applying to other cases arising in tort. The injured party is entitled to adequate compensation for the damages actually sustained up to the commencement of the suit as a direct result of the nuisance. It is manifest the rule invoked by defendant would be wholly inadequate to compensate plaintiff for the special damages she alleged and proved and this is enough to compel its rejection. Defendant argues, in effect, that because in actions founded in private nuisance general damages, i. e., those that naturally and necessarily result from the nuisance, may be recovered under a general allegation of damages; special damages, i. e., those that are the natural but not necessary result of the nuisance, cannot be recovered at all. The argument clearly is unsound. In such cases, special damages, when specially pleaded and proven, are a proper element of the plaintiff's measure of damages. The owner in the

occupation of his property has the right to the undisturbed possession and enjoyment thereof, and when that right is invaded, he may remain, if he chooses, in the occupation of his property even in the face of possible danger to himself, and full responsibility for the consequences of the wrongful invasion of his rights rests upon him who inflicts the injury. The court observed the correct rule in the instructions given.

But it is urged that no proof of the amount of the special damages was offered. For some reason, not apparent, the damage to the fence and yard was not submitted to the jury in the instructions given. We have already noted the testimony relating to the amount of the damage to the foundation. Plaintiff herself removed the mud deposited in the cellar at various times and the value of her services is necessarily a matter of opinion. It was proper to permit the jury to estimate that value, notwithstanding the absence of opinion evidence, which at best is but advisory. The amount of the damage resulting from the unsanitary and uncomfortable condition of the house and from the closing of the passageway to and from the street, not being susceptible of arithmetical computation but resting solely in opinion, was likewise properly sent to the jury without the aid of opinion evidence. The proof was not deficient in the respects under consideration.

The case was tried without error and we observe no reason for disturbing the judgment on the ground of an excessive verdict. The judgment is affirmed. All concur.