MAHLON W. NEWTON. RESPONDENT, v. GLOBE INDEMNITY COMPANY, APPELLANT.

Submitted March 24, 1919—Decided June 20, 1919.

B. R. entered into a contract with the freeholders of Atlantic to build a road. It was finished and accepted, subject to B. R.'s obligation to maintain and repair it for one year thereafter, to secure which the freeholders, under the terms of the agreement, retained five per cent. of the contract price, which amounted to $9,830.14. Afterwards the contract and the retained percentage were assigned by B. R. to J. B. R., and by him to M. W. N., the plaintiff. J. B. R., as principal, and the defendant, G. I. C., as surety, entered into a bond to the plaintiff, M. W. N., in the penal sum of $10,000, with condition that if the principal,

J. B. R., should repair all defects in the roadway arising from defective workmanship or material, ordinary wear and tear excepted, and should indemnify and save harmless the obligee, M. W. N., from and against all loss which he might be put to by reason of the failure of the principal to cause said repairs to be made, then, &c. Plaintiff, M. W. N., received from the freeholders $8,330.14, who retained the balance of $1,500 out of the retained percentage to make good defects in the roadway, which had not been repaired. There was evidence that the repairs had not been made and that it would cost $1,500 to make them. *Held*, that in these circumstances the plaintiff, M. W. N., had been "put to loss" in the sum of $1,500; and that, therefore, there had been a breach of the bond, and that plaintiff was entitled to recover.

On appeal from the Supreme Court. Case tried at Circuit.

For the appellant, *Lum, Tamblyn & Colyer.*

For the respondent, *Joseph J. Summerill* and *Endicott & Endicott.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. This was a suit on a bond of indemnity for $10,000, and a verdict passed for plaintiff. Judgment thereon, and defendant appealed.

Bryant Reilly, on January 10th, 1910, entered into a contract with the board of chosen freeholders of the county of Atlantic to build a road. It was finished, and was accepted by the county and state authorities, subject, however, to Reilly's obligation to maintain and repair the road for one year thereafter, to secure which the freeholders of Atlantic, under the terms of the contract, retained five per cent. of the contract price, which amounted to $9,830.14. Afterwards, the contract and retained percentage were assigned by Bryant Reilly to James B. Reilly and by him to the plaintiff, Mahlon W. Newton.

On March 20th, 1914, James B. Reilly, as principal, and the Globe Indemnity Company, defendant, as surety, executed a bond to the plaintiff, Mahlon W. Newton, in the penal sum

of $10,000, with condition "that if the aforesaid principal shall repair all defects in said roadway arising from defective workmanship or material, ordinary wear and tear excepted, from the date hereof unto July 31st, 1914, the date upon which the maintenance period of said work expires, and shall indemnify and save harmless the said obligee from and against all loss, cost and expense which the said obligee may be put to by reason of the failure of the principal to cause said repairs to be made during the said term, then this obligation shall be null and void; otherwise to be and remain in full force and effect."

On January 18th, 1916, the plaintiff, Mahlon W. Newton, received from the freeholders of Atlantic $8,330.14, under an agreement which provided that the county should retain the balance of $1,500 out of the $9,830.14, the retained percentage, to make good the defects in the roadway, which had not been repaired.

The plaintiff contended that James B. Reilly, needing money to enable him to perform the contract, got plaintiff to endorse his note for $10,000, and that, to indemnify him from loss on it, the bond was given. Newton, the plaintiff, was obliged to pay and take up the note. The witness Miss Feyl, a clerk in James B. Reilly's office, testified that the bond and assignment were taken to secure the note. And plaintiff testified to the same thing. Objections were made to this testimony on the ground that the bond spoke for itself and its terms could not be varied. This appears to be true, and we think the objections should have been sustained; but, in our opinion, the testimony was harmless. It is perfectly obvious that the bond was given to secure the making of repairs to the road by James B. Reilly, the principal, and to indemnify and save the plaintiff, Newton, harmless from all loss which he might be put to if default should be made in the condition. It was quite immaterial that the principal and obligee had entered into other undertakings for and on account of the matter. The trial judge distinctly charged the jury that the suit was on the bond and not on the note, and that recovery could only be had for a breach of the bond

if that were proved. The testimony about the note was irrelevant and incompetent, but harmless. It had no bearing on the gravamen of the complaint, which was as to the breach of the bond. And harmless errors are not ground for reversal.

The question, therefore, is, Was there any evidence tending to prove a breach of the bond, or should the motion to direct a verdict for defendant have been granted?

The condition of the bond was, as seen, that if James B. Reilly should repair all defects in the roadway arising from defective workmanship or material, ordinary wear and tear excepted, from the date thereof, March 20th, 1914, to July 31st, 1914, and indemnify and save harmless the plaintiff, Newton, from and against all loss, &c., which he might "be put to by reason of the failure of the principal to cause the repairs to be made during the term thereof, then," &c. Now, it must be perfectly obvious that if the plaintiff, Newton, were *put to loss* by the failure of James B. Reilly to make the repairs, then there was a breach of the condition of the bond. In the bond itself the contract between Bryant Reilly and the freeholders, which was assigned to James B. Reilly, was referred to and made a part of that instrument. That contract required Bryant Reilly to maintain and repair the road for one year after its acceptance, admittedly, to July 31st, 1914. This obligation fell upon James B. Reilly, and there was abundant evidence to the effect that neither he nor Bryant Reilly discharged that obligation. It is also apparent that the plaintiff, Newton, was entitled to every dollar of the retained percentage of the contract price if Reilly performed by maintaining and repairing the road, and, if he did not so perform, then Newton was entitled to all, less such an amount as was required to maintain and repair the road, as James B. Reilly should have maintained and repaired it under the contract. And every dollar that Newton failed to receive by reason of this default, was *loss to which he was put,* to use the words of the bond, "by reason of the failure of the principal to cause said repairs to be made during the said term."

Alexander H. Nelson, a civil engineer, whose competence as an expert engineer was admitted, testified that he was county engineer of Atlantic county, and was examined, *inter alia,* as follows:

"*Q.* Now, did James B. Reilly, between the 20th day of March, 1914, and the 31st day of July, 1914, repair all defects in the said roadway arising from defective workmanship or material, ordinary wear and tear excepted?

"*A.* He did not.

"*Q.* You have said that you made an estimate of how much it would take to make those repairs?

"*A.* I did.

"*Q.* Will you now tell us what that estimate was?

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"*A.* $1,500."

If a contractor and builder qualifies himself as an expert he may give testimony as to the cost of repairing a building. *Higgins* v. *L. A. Gas and Electric Co.,* 159 *Cal.* 651. See, also, *Frick* v. *Kansas City,* 117 *Mo. App.* 488. Obviously, a county engineer, who qualifies as an expert civil engineer, may give testimony as to the estimated cost of repairing a road.

It is true that Mr. Nelson, on cross-examination, gave testimony contradictory to what he had said about the period concerning the repairs, but that only discredited his former testimony and left it open to the jury to find the fact. It does not permit us to say as matter of law that the latter statement must be taken in exclusion of the former, and that, therefore, there is no evidence of want of repairs during the period covered by the bond and no evidence of the amount necessarily required to make them.

This case is not like that of *Jeffers* v. *Johnson,* 21 *N. J. L.* 73, where the covenant to indemnify and save harmless was from all damages, &c., which the obligee might or should be put to or in anywise be called upon to pay; for and on account of being surety for the postmaster of Salem. On the trial the plaintiffs, obligees, proved the record of a judgment in the case of United States *v.* Elwell, the postmaster. But

the court charged the jury that in order to recover on this covenant of indemnity, the plaintiffs must show that they had paid the debt, and this was upheld. There the obligees were not put to loss, unless and until they made a loss by paying their principal's debt. Here, the plaintiff, Newton, has been put to loss, because $1,500 of the money he was entitled to receive on the contract between Reilly and the freeholders was retained and kept from him by the freeholders by reason of Reilly's very default against which the bond was given as security.

Nor is this case like that of *Miller* v. *Fries*, 66 *N. J. L.* 377, where the condition of the bond was to save and keep harmless the obligee from all debts and liabilities existing, &c. The only fact assigned and proved as a breach was that one of the debts had passed into judgment. But the court held that such a covenant was not the equivalent of one to pay debts, and that, consequently, no damages could lawfully be awarded on such an allegation of breach. There was no proof of loss against which the bond was given as security. Here, as stated, the loss has occurred. Newton, the obligee, did not have to pay anybody anything in order to recover on the bond. He was damnified if Reilly did not repair the road, and he, Newton, was put to loss if he did not. Reilly did not repair and Newton was put to a loss of $1,500 because of Reilly's default. This is directly within the covenant.

This case was submitted on briefs, and while there are several exceptions relating to the charge, one only is argued by the defendant-appellant to be erroneous. It is, that the judge told the jury that the defendant company was not represented at the settlement between the plaintiff and Reilly and the county; that defendant would not, therefore, necessarily be bound by the arbitrary deduction of money from Reilly or his assignee, unless based on an honest understanding of what sum was actually necessary to do the work on the road that Reilly was required to do under the bond. This, we think, was error, because the defendant, not being a party to the agreement, was not bound by anything they did;

but as there was competent evidence to justify the verdict, namely, that the repairs had not been made and that it would cost $1,500 to make them, this phase of the charge was harmless, and, therefore, not ground of reversal.

The motion to direct was rightly overruled; the admission of illegal testimony, and the erroneous charge, were harmless. The judgment should, therefore, be affirmed.

BERGEN, J. (dissenting). My vote to reverse is based upon my conclusion that there was no sufficient proof, which the jury ought to consider, to show the damages which the plaintiff suffered. The only proof is that the county engineer estimated that $1,500 would cover the cost of the repairs required, and this amount was agreed upon by the plaintiff and the county. The defendant is not bound by the agreement between the plaintiff and the county based upon an estimate of the county engineer. There should have been proof of the extent and character of the necessary repairs, and the question of cost determined by the jury who are not bound by the conclusion of the two interested parties in which the defendant did not participate. Parties claiming the breach of a bond cannot fix the damages. The obligor is to pay only when the extent of the repairs indemnified against are proven, which was not the case here. The plaintiff was making a settlement with the county for his neglect to repair and allowed $1,500 as the estimated cost, and the liability of the obligor cannot be fixed by the agreement of the parties who are antagonistic to the obligor.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, JJ.    11.

*For reversal*—BERGEN, TAYLOR, GARDNER, JJ.    3.