DANIEL E. BARTHOLOMEW ET AL., APPELLANTS, v. WARD INVESTMENT COMPANY ET AL., DEFENDANTS, KANSAS CITY, MISSOURI, RESPONDENT.*

Kansas City Court of Appeals.  June 11, 1928.

*Corpus Juris Cyc References:  Municipal Corporations, 43CJ, section 2034, p. 1267, n. 93.

*Robert M. Murray, J. M. Johnson* and *Donald W. Johnson* for appellant.

*John T. Barker, Robert J. Ingraham* and *Roy B. Cunningham* for respondent.

BLAND, J.—This is a suit for damages caused by surface water. At the close of plaintiff's evidence the court sustained demurrers to the evidence as to all three of the defendants.  Plaintiffs took an involuntary nonsuit with leave to set aside the same.  Thereafter the court overruled plaintiffs' motion to set aside the nonsuit and they have appealed.  Plaintiffs state that they are prosecuting this appeal solely against the defendant, Kansas City.

The facts show that in 1906 one Sylvester purchased a block of ground located south of 51st street, an east and west thoroughfare,

and east of Wornall road, a north and south highway then in Jackson county and without the limits of the defendant, Kansas City. This ground ran 450 feet southward along the road from the intersection of said street and road and 600 feet east of said intersection along 51st street to Wyandotte street. At this time the tract of land was in the country and was what is described as "acreage" property. The Ward Investment Company and the Country Club owned property known as the Country Club, directly west of and adjacent to Wornall road and west of the Sylvester tract. The natural drainage of the water on the Sylvester property was from the southwest to northeast. The general trend of the drainage on the Country Club property was in the same direction but at a point opposite 51st Street Terrace, the first street south of 51st street. there was a natural low place into which water drained. Prior to the grading of Wornall road between this low place and what afterwards became the Sylvester property, the water ran from the low place in a northeasterly direction. It came across Wornall road at about 31st street. Wornall road was graded about forty years before the trial, which was in May, 1926.

Sometime before Sylvester acquired his property, the county constructed a fifteen or eighteen inch culvert under Wornall road, connecting the low place in question with the land to the east of the road. However the east end of the culvert was on the property of the county and ended at a ditch running alongside and parallel to the road. This culvert under Wornall road was about three feet higher than the bottom of the pond and about one and one-half or two feet below the top of Wornall road as graded so that a pond was formed at the low place west of the road and the water was required to collect in large quantities in the pond before it could flow through the culvert and it thus flowed only after heavy rains. The east end of the drain was located between 51st street and 51st Street Terrace, about twenty or thirty feet north of the latter street.

Sylvester testified that the south part of his tract of land was much higher than the north; that where the culvert came through Wornall road his property was higher than the road, and the water ran down a ditch along the side of the road, presumably on the land of the county, and then escaped onto his property, causing a ditch to be washed through it in a northeasterly direction for its entire length of 600 feet. This ditch emptied into a large sink hole at 51st and Wyandotte streets. He complained to a representative of Country Club in reference to the matter but it took no action and after two or three storms he cemented up the end of the culvert. This caused the water to be backed up onto the Country Club proper, and a representative of the Club protested to the witness. About six months after the witness stopped up the culvert, he reopened it, This was

about eighteen years before the trial. Afterwards he laid a drain pipe fifteen or eighteen inches in diameter along the ditch that had been washed across his property. He did not think that he directly connected the pipe with the end of the culvert but he laid it in such a manner that the water coming through the culvert would flow into his drain. Subsequently someone made a direct connection between the culvert and the drain. After laying the drain through his property, Sylvester graded up the low places in his land. He filled it in to a height of ten or fifteen feet at the lowest place, which was at the northwest corner of the property. At this point he brought it to the level of Wornall road. After the fill was made, the drainage remained as it had before, that is, toward the northeast. No one other than Sylvester had anything to do with the laying of the drain pipe on his land or with the filling up of the land.

In 1916 Sylvester sold the property to one Parker and in the year 1922 the property, or at least a part of the same, was acquired by the Bingham Building Company. This company erected several duplex apartment buildings along 51st street, facing north thereon, in April of that year. One of these duplex apartments was situated about 200 or 300 feet east of Wornall road and was the sixth building therefrom. This building was acquired by plaintiffs in March, 1923. It appears that the drain laid by Sylvester ran immediately under that part of his land upon which subsequently the house owned by plaintiffs was erected. The drain was laid so deeply under the house that in digging the basement it was not discovered, and the Bingham Investment Company and the plaintiffs knew nothing of its presence until it burst under plaintiffs' house in September, 1923, causing damages to the same. This suit is to recover damages caused by the bursting of the drain at that time and place.

Sylvester testified that he did not know what was the natural drainage of the water from the Country Club property originally and before the county built Wornall road; that he did not think that the water ran at that time where the culvert was afterwards constructed under the road but thought it ran north to 51st street, because that was the low place. Another witness of plaintiffs testified that "if the road had not been put in there all that water from the surrounding country and to the north and to the west and to the south would have drained down and across just about where the culvert was." Whether the natural drainage from the low place on the Country property was where the culvert was placed or several feet to the north thereof at 51st street, there is nothing to show that after the water arrived upon what afterwards became the Sylvester tract, it did not naturally flow, in whole or in part, over that part of the property where plaintiffs' house now stands. The evidence was that plaintiffs' house is northeast of the pond and that "surface waters

east of Wornall road right now drain generally right down across this (plaintiffs') property."

It appears that the defendant city extended its limits in 1908. There is no evidence that it did anything in reference to the situation there until five or six years before the trial when some fire engines of the city were seen pumping the water from the pond over Wornall road into 51st street, which street was then paved. It appears that the city at no time disturbed the culvert or the Sylvester drain connected thereto. In fact, there is no evidence that after Sylvester laid the drain it was disturbed between plaintiffs' house and the pond by anyone unless the culvert and the drain were connected together after that time. The evidence shows that none of defendants disturbed the contour of, or the natural drainage upon, the Country Club property. The drain pipe burst after a very heavy rain storm. There was testimony very strongly tending to show that the cause of its bursting was its having been stopped up below plaintiffs' property. The petition in the case alleges—

" . . . that the defendants are now, and were at all the times herein mentioned, owners of, and in possession of a tract of land lying immediately west and south of Wornall road and 51st street in Kansas City, Missouri; that the defendant, Kansas City is now, and was at all of said times, the owner of, in possession and control of the portion of Wornall road lying immediately adjoining the above-mentioned property on the east. That the land of defendants' has a frontage on Wornall road (a north and south street) and the general drainage of said land is toward the north and east; that at a point on defendants' land near the corner of 51st street and Wornall road. said land slopes in such a manner as to form a large pond or lake, and all of the surface water and drainage from defendants' property has been, and is now. allowed to collect in said pond or lake in large quantities; that at some time in the past. to-wit: in about the month of June. 1915 (the exact time being unknown to plaintiffs). defendants. without permission from plaintiffs. or those from whom they derived title. unlawfully constructed a drain consisting of a large pipe laid under the ground leading from said pond or lake in a northeasterly direction under Wornall road and running diagonally under plaintiffs' property; that said drain was unlawfully and negligently constructed in that the sections of said pipe were laid on uneven ground and the joints of said pipe were not closed or sealed in any way, and negligently maintained and used by defendants for the purpose of discharging large volumes of surface water and drainage so collected in said pond through said drain and onto plaintiffs' property.

"Plaintiffs further state that the defendants on or about the 29th day of September, 1923. and ever since, have wrongfully, wilfully.

maliciously and negligently maintained said drain as above described, extending same to and upon the land of plaintiffs', thereby wrongfully, wilfully, maliciously and negligently diverting from its natural course the rainfall and the water falling or being on said land of defendants;'' and wrongfully, wilfully, maliciously and negligently caused the same to be discharged and to flow through said drain upon the property of plaintiffs hereinbefore described, and unlawfully, wilfully, maliciously and negligently continued to maintain said pipe and flow of water and drainage as aforesaid, thereby greatly injuring and damaging plaintiffs' property as hereinafter set forth.

''Plaintiffs further state that at sometime during the month of September, 1923 (the exact time being unknown to plaintiffs), and while defendants were maintaining said drain as above set out, and discharging large quantities of surface water through the same as above described, said drain bursted at a point on on near plaintiffs' property and large quantities of water escaped therefrom and collected in a great mass under the basement floor of plaintiffs' house.''

Plaintiffs insist that the court erred in sustaining the demurrer to the evidence of the defendant, Kansas City, for the reason that ''although surface water is a common enemy which every man may ward off his own land and thus throw it on an adjacent or lower owner, the rule is well settled that the dominant proprietor may not collect surface water on his own land and discharge it in a body on the land of the servient proprietor;'' that the negligence of the city consists—

''(a) Maintaining the elevation in Wornall road which increased the size and depth of the pond, and

''(b) Maintaining the drainage pipe across Wornall road;'' that this is not a case where the city hastened or incidentally increased by artificial means the flow of surface water along a natural depression but is one ''which is concerned alone with the diversion of surface water from its natural flow.''

Conceding for the purposes of the case that the contentions of plaintiffs are well taken, we think that they have wholly failed to prove the cause of action alleged in the petition. The petition alleges a cause of action based upon the negligent construction of the whole drain, including the culvert, by the defendants including the city; that they went upon the land of plaintiffs without their permission, in other words, they were trespassers, and laid the pipe and negligently constructed it in that the joints of the pipe were not closed or sealed in any way. Of course, the evidence does not support these allegations.

The petition may also be broad enough to allege or to attempt to plead a cause of action for diverting the water from its natural course, that is, from the pond or lake in which the petition alleges

954

defendants "allowed" the surface water to collect by means of a drain running directly to and under plaintiffs' property. In other words, the petition alleges that defendants diverted the water from its natural place or course (the pond) directly onto plaintiffs' property and cast it thereon in a body. The evidence does not support this allegation of the petition. The evidence does not show that defendant city had anything to do with the creation of the situation. If anything, the city merely *maintained* the culvert. Neither it nor the county laid or assisted in the laying of the Sylvester drain. In other words, the petition alleges that defendants, including the city, *constructed* the whole drain consisting of the culvert and Sylvester's drain, running it onto plaintiffs' property without plaintiffs' consent, while the evidence shows that the city constructed no part of the culvert or drain but merely maintained the culvert upon its own property. From all the record discloses, when the city took over Wornall road from the county, the situation that afterwards caused plaintiffs' damages was already in existence. That is to say, the drain consisting of Sylvester's pipe and the culvert, running from the pond to plaintiffs' property, was constructed by the combined acts of the county and Sylvester, the latter being plaintiffs' predecessor in title. Whether the city would be liable to plaintiffs for the bursting of the drain under such circumstances, merely because it *maintained* the culvert, is not presented to us in the briefs nor is it involved in this case in view of the allegations of the petition. It is enough to say that the cause of action, if any, alleged in the petition was not proved at the trial. [Rycklicki v. St. Louis, 115 Mo. 662; Gleason v. City of Kirksville, 136 Mo. App. 521; Frick v. Kansas City, 117 Mo. App. 488. 496.]

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.