Jasper **TITONE**, Appellant,

v.

**TEIS CONSTRUCTION COMPANY, Inc.,**
a corporation, Respondent.

No. 24794.

Kansas City Court of Appeals.
Missouri.

Feb. 5, 1968.

Rehearing Denied April 1, 1968.

————◆————

Allan R. Browne, Ennis, Browne & Martin, Kansas City, for appellant.

Donald K. Hoel, Kansas City, Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, of counsel, for respondent.

MORGAN, Judge.

At the close of plaintiff's evidence in this jury tried case, the trial court sustained defendant's Motion For A Directed Verdict. Plaintiff has appealed, and the ultimate question is whether or not he made a submissible case.

Plaintiff's theories of recovery against defendant were set out in one paragraph of one count of the petition as follows: "For cause of action against Defendant, Plaintiff states that for several months in 1965, the exact times of which are unknown to Plaintiff, but are known to Defendant, Defendant wrongfully, illegally, wantonly, and with legal malice, recklessly and with gross negligence, operated construction and excavating work in front of, around and near his business place, blocking access thereto, causing heavy vibrations, damaging his property and causing him loss of business to his actual damage in the sum of Four Thousand ($4,000.00) Dollars; that said action as above described entitle him to punitive damages in the sum of Six Thousand ($6,000.00) Dollars."

Having commingled several legal theories, obvious in the quoted allegations of the petition, plaintiff is consistent in his rather ambivalent attack by presenting here all possible avenues of recovery under one "Point." However, if there is to be any logic to our review of the case, we, of necessity, will consider individually those theories of recovery touched on in the petition, i. e., (1) obstruction of access, (2) negligence and (3) trespass by nuisance.

The setting for defendant's alleged actionable conduct was on the south side of Tenth Street in Kansas City, Missouri. Plaintiff was in possession of business locations at 407 and 409 East Tenth Street and operated a pool room in 407 and a laundromat in 409. Both businesses faced to the north and a north-south alley bordered 409 on the east. The sidewalk in front of the locations was approximately 8 feet wide with adjacent metered parking at the curb. A parking lot in the rear (south side) of the building was available for plaintiff's customers during certain limited hours of the day. On May 14, 1965, the City passed Ordinance No. 31241 which, among other things, authorized the Kansas City Power & Light Company to construct and maintain two under-sidewalk reinforced concrete vaults for the installation of electrical transformers and wiring in front of plaintiff's locations. The following excerpt

therefrom indicates somewhat the extent of the project: " * * * The east wall of the combined vaults will be on a line approximately 14 feet west of the west line of the north-south alley. From said east wall the vaults will extend westward for a distance of 32 feet, 3 inches. The width of the vaults will be 9 feet, 5 inches, and the depth approximately 10 feet, 9 inches." Although not clearly shown, it appears the work extended south along the alley. Defendant was the contractor performing this work.

The testimony was limited to that of plaintiff, and it can be fairly generalized with particular attention being given to setting out that part apparently thought significant by plaintiff as indicated in his brief. He drew some customers from the many apartments and hotels in the vicinity; customers were prevented from parking in the metered curb locations; the parking area to the rear was free after 6 P.M. and on week ends, but the alley access route was barred due to this work, and if the parking area was to be used, a customer would have to walk west to Oak, north to Tenth and east to plaintiff's locations; workmen noisily and dustily cut out the sidewalk by use of a jackhammer and a back hoe; when they hit solid concrete, they had to use a "heavy duty machine like a pile driver" and when it was dropped the whole building would shake; he had a water pump that provided a continuous flow of hot water at 140°s to the different washing units and " * * * the vibration hit so hard one day it clogged my spindle."; this caused some flooding and required repair of the unit; several days later, "Same thing. It blew. I had to go through the same deal. I had to run around and buy the parts and shut down again."; wooden sawhorse barricades surrounded the working area cutting off "the entrance to my business"; they (apparently the general public) "walked across the street and around. That is the only thing they could do."; for over 90 days the sidewalk barricades compelled the public to go around " * * * traffic was 'nil.' "; customers quit coming rather than try to "jump around to

get into the doorway"; because of the noise and dust he had to keep his door shut, and the resultant heat drove customers away; some of his pool-playing customers used the tables in the YMCA across the street; the walkway provided ran east and west next to the building and was 2½ to 3 feet wide and at times solid plywood covers were placed over the excavation; picture exhibits show the walkway had to be removed when the workmen were pouring concrete; he removed the inside door between 407 and 409 so that customers could pass between the laundromat and pool hall where he also sold peanuts, candy and pop corn; the exhibits indicate the work did at times block direct access to 407; when necessary to remove the plywood covers and the walkway, defendant's employees would stop and provide a plank walkway for customers or plaintiff. Defendant's attorney made the following inquiry of plaintiff, "So we don't have any confusion about this, is it a fact, Mr. Titone that your customers at all times had access into your laundromat?" Plaintiff's reply was "Yes, sir. They could at all times come in." Plaintiff also testified the workmen were always "hard at work," often continued to work until 10 P.M., and they were always courteous and polite to any customers.

First, plaintiff's right to recover for the alleged invasion of his right of ingress and egress will be considered.

In Dillon Municipal Corporations, Sec. 730, Fourth Edition, we find: "Although the distinction between the extent of the rights of the public in a street and the right of the abutting proprietor to *access to his premises* from the street, has been often overlooked, yet it is one which has been asserted by high authority, and which may be regarded as thoroughly established. The right of an abutting owner to access to and from the street is a *private right,* in the sense that it is something different from the right which the members of the public have to use the street for public purposes * * *" The protection of this private right, peculiar and special to the abutting proprietor, has created general legal prin-

ciples uniformly stated in text authority; but, notwithstanding the urbanization of our society, the decided cases on this singular issue have been so limited as to cause text writers to comment on the "paucity" of judicial precedent. Annotation: 68 A.L.R. 340. In 64 C.J.S. Municipal Corporations § 1746, p. 173, we find: "Ordinarily an obstruction of a *temporary* character is not illegal per se and a nuisance, as where persons other than abutting owners temporarily obstruct the streets in connection with business purposes, and such an obstruction becomes a nuisance only from *unnecessary delay* in removal. Thus, a municipality may lawfully authorize a *temporary* and *reasonable* obstruction of streets, and such an obstruction does not constitute a purpresture." (Emphasis added) In 25 Am.Jur., Highways, Sec. 320: "A loss of business due to a mere temporary obstruction for a lawful purpose, within the limitation of necessity and reasonableness, is damnum absque injuria. But liability will be incurred by exceeding such limitation." See 86 A.L.R. 101; 68 A.L.R. 1510. The rule accepts a temporary obstruction as a legitimate incident of and limitation on an easement of ingress and egress. In Frick v. Kansas City, 117 Mo.App. 488, 93 S.W. 351, this court, after following the general rule, found defendant had exceeded "such limits." In that case the defendant in sewer construction had piled a ridge of dirt in the street along the front of plaintiff's property and had entirely shut off access. The ridge of dirt was allowed to remain long after it was known it would not be needed for back-fill and would have to be hauled away. This court said: " * * * had defendants observed the degree of care required of them in raising the embankments in the street and on the vacant lot, and had they acted with reasonable diligence in the removal of the dirt from the street when it became apparent that it was not needed for refilling, plaintiff would have had no cause of action for any damage inflicted upon her property, or any inconvenience or annoyance incurred by her in consequence of the presence of the embankments."

In the instant case plaintiff's right to recover on his first theory is conversely bottomed on a showing of the "unreasonableness" of the defendant's effort to provide access under all of the existing circumstances. Of necessity, the size and extent of the project has some bearing on such a determination. It appears the ordinance contemplated a major project. Neither was it alleged, nor was an effort made by plaintiff to offer any evidence that the 90 day work period was unreasonable. To the contrary, the evidence shows defendant's employees worked hard and long hours in attempting to complete the project which directly tended to minimize the effect of their presence in the area. We do not belittle plaintiff's complaints and recognize his pattern of conducting the business was undoubtedly disturbed, but "property owners, as well as the traveling public, must expect to suffer the inconvenience and even damage occasioned by the presence of such obstructions." Frick v. Kansas City, supra, 93 S.W. l. c. 353. Further, no recovery can be had for the temporary removal of the metered parking stalls at the curb as such action was encompassed in the right to obstruct the adjacent street, nor for blocking the alley on the east. The latter only required a longer walk from the parking area around the buildings to the west resulting in a circuity of route which has often been ruled non-compensable. State ex rel. State Highway Commission v. Meier, Mo., 388 S.W.2d 855.

Distinctly different legal principles are applicable to plaintiff's two remaining theories of liability. "Nuisance and negligence are two different kinds of torts. 'Negligence' is a failure to use a degree of care required under the particular circumstances involved; whereas 'nuisance' does not rest on the degree of care used, but on the degree of danger existing with the best of care.", Bollinger v. Mungle, Mo. App., 175 S.W.2d 912, l. c. 916; however, a claim based upon either theory requires proof of one common and essential element, i. e., proximate cause. It must be deter-

mined if plaintiff offered sufficient evidence to enable the jury to trace the causal connection between the action complained of and the claimed damage to the water pump. The only evidence offered was plaintiff's statement that during the vibrations the "spindle" on his water pump "clogged" requiring repairs and at a later date the same thing happened with the descriptive explanation "It blew." In Hogue v. Wurdack, Mo.App., 298 S.W.2d 492, 498, we find the oft quoted standard for resolving the question of causation: "Of course, a finding essential to recovery may be proved by circumstantial evidence; but, our appellate courts have said repeatedly that, in civil cases, the shown circumstances must be such that the facts necessary to support the finding may be inferred and reasonably must follow, that the existence of such facts may not depend upon guesswork, conjecture and speculation, and that the evidence should have a tendency to exclude every reasonable conclusion other than the one desired. * * *" Osterhaus v. Gladstone Hotel Corporation, Mo., 344 S.W.2d 91; Lindsay v. Wille, Mo., 348 S.W.2d 1, 4. Did the evidence offered "have a tendency to exclude every reasonable conclusion other than the one desired" that the vibrations "clogged" some part of the equipment? Certainly the normal connotation of the word "clogged" in connection with a water system is that it became stopped up. A jury would have to resort to guesswork, conjecture and speculation to find it resulted from vibrations. If the terminology used held a special meaning for plaintiff some explanation should have been given. The shortcomings of the probative value of the proof offered are made more apparent by reference to an answer of plaintiff in describing the duties of his repairman that came most every week. It was, " * * * repairs, repairs, and repairs and fixes." In the absence of proof sufficient to sustain a finding of proximate cause, there is no necessity that we consider defendant's additional contentions that proof is lacking to establish other necessary elements of a claim founded on either negligence or nuisance.

We agree with the trial court that plaintiff failed to make a submissible case, and the judgment is affirmed.

All concur.