Ross Nisi and Mary Nisi Palmesano, Administrator and Administratrix of the Estate of Martha Nisi, also known as Mattia Nisi, deceased, appellees, v. Checker Cab Co., a corporation, appellant.

105 N. W. 2d 523

Filed October 21, 1960. No. 34774.

*Gross, Welch, Vinardi, Kauffman & Schatz,* for appellant.

*Albert Lustgarten, Schrempp & Lathrop,* and *Henry C. Rosenthal, Jr.,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought in the district court for Douglas County by Ross Nisi and Mary Nisi Palmesano, administrator and administratrix of the estate of Martha Nisi, also known as Mattia Nisi, deceased, against the Checker Cab Company, a corporation, defendant, to recover damages for the wrongful death of plaintiffs' decedent caused by the negligence of a driver of one of defendant's taxicabs. The jury returned a verdict in favor of plaintiffs and against the defendant, assessing the amount of recovery for plaintiffs in the sum of $8,868.15. The defendant filed a motion to set aside the verdict and for judgment in accordance with its motion for directed verdict at the conclusion of the plaintiffs' evidence and at the conclusion of all of the evidence. This motion was overruled. From the overruling of defendant's motion, the defendant perfected appeal to this court.

The plaintiffs' petition, insofar as it need be con-

sidered here, alleged in substance that on or about May 30, 1958, at about 9:20 p.m., Martha Nisi was proceeding from the west to the east side of the street in front of or to the east of the premises described as 1234 South Tenth Street in the city of Omaha; that as she reached a point at about the center of the street she was then and there struck by a northbound Checker cab operated by the driver, Stanley W. Hartwell, in the course and scope of his employment with the cab company; and that as a result of such collision Martha Nisi was thrown to the street and killed. The plaintiffs further alleged that the death of Martha Nisi was directly caused by the negligence of the driver of such taxicab in the following respects: (1) In operating the taxicab at such time at an excessive rate of speed; (2) in his failing to keep a proper lookout at such time and place; (3) in failing to keep the taxicab under proper control; and (4) in failing to operate the taxicab on the right or east side of the street.

The first cause of action alleged in the plaintiffs' petition related to the loss of services to the surviving husband and the second cause of action related to burial expenses and other expenses incident thereto.

For answer to the plaintiffs' petition the defendant admitted that the plaintiffs were the duly authorized, appointed, qualified, and acting administrator and administratrix of the estate of Martha Nisi, deceased, and were residents of Omaha; that the defendant was engaged as a common carrier in the taxicab business in the city; and that at the time and place set out in the plaintiffs' petition an accident occurred and as a result thereof the plaintiffs' decedent met death. The defendant's answer denied all other allegations contained in the petition, and further denied that its driver was negligent. The answer then claimed that the sole and proximate cause of the accident and resulting death of Martha Nisi was her contributory negligence which was more than slight in failing to cross the street on a

crosswalk; in failing to keep a proper lookout or to take precautions for her safety; and in moving into the path of the defendant's vehicle. Defendant prayed that the plaintiffs' petition be dismissed.

For reply to the defendant's answer, the plaintiffs denied all of the allegations contained in such answer which were not admissions of plaintiffs' petition.

The defendant assigns as error (1) that the trial court erred in overruling defendant's motion for directed verdict at the conclusion of plaintiffs' evidence and at the conclusion of all of the evidence; (2) that the trial court erred in overruling the defendant's motion to set aside the verdict and judgment and for judgment in accordance with the motion for directed verdict; and (3) that the trial court erred in refusing to hold that the plaintiffs' decedent was guilty of contributory negligence as a matter of law.

The following rules of law are applicable to this case.

In Corbitt v. Omaha Transit Co., 162 Neb. 598, 77 N. W. 2d 144, this court held: "A motion for a directed verdict must for the purpose of decision thereon be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the evidence."

It is not the province of this court in reviewing the record in an action at law to resolve conflicts in or weigh the evidence. It is presumed in such an action that controverted facts were decided by the jury in favor of the successful party, and its finding based on conflicting evidence will not be disturbed unless clearly wrong. See, Snyder v. Farmers Irr. Dist., 157 Neb. 771, 61 N. W. 2d 557; Shields v. County of Buffalo, 161 Neb. 34, 71 N. W. 2d 701.

The record shows that a police officer of the city of Omaha assigned to the traffic investigation division of

the police department arrived at the scene of the accident shortly after 9:20 p.m., on May 30, 1958. Upon arriving at the scene, he found a vehicle and the body of a female person. The pavement was dry and it was generally clear that evening. He made an investigation in the 1300 block on South Tenth Street. He testified that the block constitutes several blocks between William Street and Pierce Street, with no intervening cross streets between those two streets; and that the closest stop-and-go signal is on South Tenth and William Streets, approximately 4 blocks from the general scene of the accident. He asked the driver of the Checker taxicab, which was the vehicle he found at the scene of the accident, to tell him and to show him approximately where the party stepped from the curb and where she was struck. The driver pointed out a place in front of 1315 South Tenth Street, on the east side of the street. This witness further testified that South Tenth Street is 50 feet 2 inches wide. The taxicab was approximately 69 feet north of the point where the driver of the taxicab indicated it struck Mrs. Nisi. There was a white line in the center of South Tenth Street. This street runs north and south. From his investigation, the officer determined that there were skid marks approximately down the center of the white line, and some skid marks slightly west of the center line. The skid marks extended backwards from the right rear wheel of the taxicab and east of the center line of the pavement. The skid marks began in front of the residence at 1315 South Tenth Street and continued northward and ended at the rear wheels of the taxicab. The body of Mrs. Nisi was found 23 feet 8 inches from the left front wheel of the taxicab and 21 feet 9 inches from the right front wheel of the taxicab. The body was lying on its back. He could see a bone sticking through the skin on one of the legs, and the face was covered with blood. He further testified that in the area where the accident occurred the

speed limit was 25 miles an hour. This witness further testified that he smelled alcohol on the breath of the driver of the taxicab.

On cross-examination this witness testified that there were large trees on both sides of South Tenth Street with branches hanging over the street; and that the taxicab driver said when he first saw Mrs. Nisi she was right in front of the cab, when it hit her. He asked the cab driver to tell him approximately where Mrs. Nisi walked out from the curb. The driver went over to the front of 1315 South Tenth Street and pointed to the curb in front of that address, stating that was where Mrs. Nisi came from, going from the east to the west.

On re-direct examination this witness testified that he took the cab driver back and showed him the skid marks.

Across the driveway north of the mortuary hereinafter referred to there is a street light. This light is approximately 20 feet above the street and on an arm extending 10 to 12 feet from the west curb on South Tenth Street.

A captain of the Nebraska Safety Patrol testified that he had been associated with the patrol for 22 years and was in charge of the education and training division of the patrol. In 1944, he was awarded a fellowship by Northwestern University in the study of traffic administration, including specialized study of the investigation of physical facts. He had classwork, and conducted tests at various speeds with different types of automobiles to compute various speeds from various stopping distances, and made skid mark and speed computations. Following his work at Northwestern University he conducted a training course for new officers in the Nebraska Safety Patrol, and was an instructor in the field of skid marks. This witness testified that he made an examination in the area between William and Pierce Streets on South Tenth Street in the fore part of April 1959;

and that the surface of the street was an asphalt-type pavement with coarse sand ground into the asphalt. He further testified that in arriving at an estimate and opinion relating to the speed of the taxicab as judged from the skid marks, he would take into consideration the type of paved surface of the street, the grade, and the condition of the pavement, whether it was wet or dry. The weight of the automobile would make a very slight difference with respect to figuring speed from skid marks. The condition of the tread on the tires would not make any difference on the stopping distance. He further testified that with respect to skidding with the wheels locked, the cramping of the wheels to the right or left makes no difference in the driver's ability to stop the car; and that after the brakes are locked the driver would be unable to steer the car as the wheels would be unable to turn. He further testified that assuming a grade of 5.4 percent on South Tenth Street, where the taxicab left a total of 69 feet of skid marks, he would estimate the speed of the taxicab to have been 34 or 35 miles an hour, which would be a minimum speed. He further testified that the normal reaction time in a situation where something unexpected comes up and it is necessary to decide what to do and then act, would be about three-quarters of a second, and that a car traveling 34 or 35 miles an hour would travel about 38 feet during three-quarters of a second. He repeatedly stated that the formula used by the Nebraska Safety Patrol actually favors the driver, and is a computation that is very lenient.

On cross-examination he testified that the length of the wheelbase of a car is not subtracted from the length of the skid marks in figuring the speed of the car.

A draftsman in the public works department of the city of Omaha fixed the grade on South Tenth Street between William and Pierce Streets at 5.4 percent.

A doctor testified that after the accident, when Mrs. Nisi's body was brought to the hospital, he examined

the body and pronounced her dead. He further examined the body and found that she had a laceration on the scalp, many bruises, abrasions, and scrapes on the skin, and dirt and gravel were ground into the skin. She also had compound fractures of the left leg and the right arm. The skin was broken, and the bones were protruding through the skin.

Dr. Levine, an expert on blood analysis who makes analyses for the Omaha police department to disclose the alcoholic content, analyzed the blood of the taxi driver and testified that it had an alcoholic content of .125 percent. This witness further testified that where the content is between .1 and .125 percent, the reaction time is slowed, as well as a person's judgment. At .125 percent, deterioration of vision, judgment, muscular activity, and reflex action begins.

The driver of the taxicab was taken to the police station and interviewed by a captain of police. A written statement was taken from him, which he signed. At the trial he was questioned about this statement. He was asked if he saw Mrs. Nisi before the right front fender of the cab struck her. He answered that she was from 2 to 4 feet in front of the right front fender when he first saw her. He did not remember telling anyone that he did not see her until the right front fender of the taxicab struck her. He was handed the statement containing his signature, and he recalled that the statement was taken the night of the accident. He testified that he possibly made the statement that he did not see Mrs. Nisi until she was in front of the taxicab, but he was so nervous at the time that he could not say whether he did or not.

Just prior to the accident Mrs. Nisi attended a wake at the Salanitro Mortuary which is on the west side of South Tenth Street about midway between William and Pierce Streets. The distance between these two cut-through streets is approximately 900 feet. Mrs. Nisi lived with her husband and son on South Ninth

Street, almost directly east of the Salanitro Mortuary. She bade some acquaintances at the wake goodbye and left the mortuary. Just after she left, someone came into the mortuary and said there had been an accident to someone who had just left the mortuary.

A witness for the defendant testified that when the accident occurred he was driving his 1950 blue Buick about 20 or 25 feet behind the taxicab. When he entered South Tenth Street at William Street, from the west, he had observed the northbound taxicab. At the time the taxicab went through the intersection it was traveling, according to the best judgment of this witness, approximately 25 miles an hour. This witness testified that after he got onto South Tenth Street he was traveling about 10 car lengths behind the taxicab; that the lights on the taxicab were on; and that he was gaining on the taxicab and supposed he was 6 car lengths behind the taxicab when something unusual happened. He further testified that the taxicab was traveling where normal traffic travels. Cars were parked on both sides of the street. This witness stopped his car 2 car lengths behind the taxicab. He got out of the car and walked to the back of the taxicab. He saw no skid marks. At the scene of the accident there were trees on each side of the street and it was rather dark in that area.

The driver of the taxicab testified that he reported for work at the taxicab company about 5:30 p.m. He had made seven trips up to the time of the accident, the last one being from the Burlington bus depot to a hospital. After he discharged that passenger, he started to return to the depot and was proceeding north on South Tenth Street. He went through the intersection of South Tenth and William Streets when the green light was in his favor, and was followed by another vehicle that had been waiting for the light so that it could turn left on South Tenth Street. This driver further testified that he went down the incline, and it was

rather steep to the north, and when he had traveled two-thirds of the block down such incline, all at once, just in front of his right headlight and within a few feet, a lady stepped out in front of the cab. It was rather dark along there. When the lady stepped out, he applied his brakes and swerved the taxicab to the left, which would be to the west, and the lady must have become confused because she took another step after he had seen her. He further testified that when he first saw Mrs. Nisi she was a little bit to the right of the right headlight; and that at that time she was facing west and, according to this witness' testimony, had apparently taken another step just after he saw her. When the taxicab struck Mrs. Nisi, she fell back over the right fender of the taxicab. It traveled approximately 30 to 35 feet before coming to an abrupt stop. The sudden stop threw her forward directly in front of the taxicab at a slight angle toward the center of the street. The front end of the taxicab was across the center line to the west, and the rear wheels of the taxicab were to the east. This witness further testified that at the time of the accident Mrs. Nisi was wearing dark clothing.

On cross-examination this witness testified that on the day of the accident he arose at 3:30 or 4 p.m., and drank a bottle of beer in his room. He further testified that he had dinner at the Avalon Bar and Restaurant around 7:15 p.m., and stayed there probably 20 or 25 minutes. He further testified that there was a dent on the top of the right front fender of the taxicab.

With reference to the speed of the taxicab, the expert witness testified that he estimated the speed of the taxicab at the time of the accident to be 34 or 35 miles an hour. Such speed was over the maximum speed limit allowed for travel in the area in which the accident occurred.

In Tate v. Borgman, 167 Neb. 299, 92 N. W. 2d 697, this court held: "A qualified expert, upon laying a

proper foundation, may give his opinion as to the speed of an automobile, based on the length of skid marks made by it when brakes were applied."

In Koutsky v. Grabowski, 150 Neb. 508, 34 N. W. 2d 893, this court held: "Various factors, such as skid marks, distance traveled after impact, and force of impact, constitute pertinent evidence in arriving at an estimate of the rate of speed of an automobile, either by those involved in an accident or those in authority investigating the accident immediately thereafter. See 5 Am. Jur., Automobiles, § 630, p. 850." See, also, Shields v. County of Buffalo, *supra.*

In Tempero v. Adams, 153 Neb. 331, 44 N. W. 2d 604, this court held: "Proof of violation of a statute or city ordinance relating to speed does not of itself establish negligence in an action for damages but it is evidence which is to be considered in determining whether a party is guilty of negligence."

It appears that Mrs. Nisi, in order to arrive at a crosswalk, would have had to walk about 390 feet to William Street, or a greater distance to Pierce Street, to arrive at any marked or unmarked crosswalk. Under the statute and the city ordinance of the city of Omaha, a pedestrian crossing a street at any point other than within a marked or unmarked crosswalk shall yield the right-of-way to vehicles upon the street. Notwithstanding such provisions, every driver of a motor vehicle shall exercise due care to avoid colliding with any pedestrian upon a roadway and shall give warning by sounding the horn when necessary, and shall exercise proper precautions.

In Armer v. Omaha & C. B. St. Ry. Co., 151 Neb. 431, 37 N. W. 2d 607, this court said: "In the absence of a prohibition by statute or ordinance a person may cross a street at any place and is not limited to crossings at intersections. The driver of a motor vehicle owes to one crossing a street at a point not a regular cross-

ing the duty of reasonable and ordinary care under the circumstances, * * *."

In the instant case the physical facts show that Mrs. Nisi was near the center of the street when the taxicab struck her. The taxicab was moving in a straight line north to the point of impact. There were no automobiles approaching with blinding headlights, nor any other reason given by the driver of the taxicab for his failure to see Mrs. Nisi until the defendant's taxicab struck her.

This court said in Anderson v. Nincehelser, 152 Neb. 857, 43 N. W. 2d 182: "The operator of an automobile equipped with headlights as required by statute, who does not observe a pedestrian until just before striking him, is not conclusively guilty of negligence. Under such circumstances it is clearly a question for the jury. The question whether the defendant should have seen the deceased, and the inferences to be drawn from the evidence adduced, are matters of evidence which a jury must decide."

"In those cases where reasonable minds may differ on the question of whether or not the operator of an automobile exercised the care, caution, and prudence required of him under the circumstances of the particular situation the issue of negligence on the part of the operator is one of fact to be determined by a jury." Miers v. McMaken, 147 Neb. 133, 22 N. W. 2d 422.

We have heretofore set out evidence concerning the odor of intoxicating liquor on the breath of the taxicab driver as observed by the investigating officer, and the percentage of alcoholic content of his blood as testified to by an expert on the subject. This evidence was admitted upon the issue relating to the driver's control of the taxicab at the time of the accident. The trial court did not instruct the jury on the question as to whether or not the driver of the taxicab was under the influence of intoxicating liquor. This evidence was properly admitted as evidence of negligence when

coupled with the physical acts or omissions, lack of control, or diminution of vision in the operation of the taxicab, and was for the consideration of the jury. See Gilliland v. Wood, 158 Neb. 286, 63 N. W. 2d 147.

The defendant pleaded the defense of contributory negligence on the part of the decedent. This is an affirmative defense which the defendant was obligated to prove by a preponderance of the evidence.

There were no objections on the part of the defendant to the instructions given by the trial court. The trial court properly instructed the jury with reference to the charges of negligence against the driver of the taxicab and the affirmative defense of contributory negligence, pleaded by the defendant, on the part of the decedent.

In the light of the evidence heretofore set out, the jury could find by a preponderance of the evidence that the defendant's driver was guilty of negligence in one or more of the elements of negligence pleaded in the plaintiffs' petition as heretofore set forth.

For the reasons given herein, the judgment of the trial court is affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.