Ella DILLENSCHNEIDER, Plaintiff-Respondent,

v.

Leonard CAMPBELL, J. D. Williams, and Consolidated Cabs, Inc. a Corporation, Defendants-Appellants.

No. 23287.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1961.

Donald E. Willson, Thos. J. Conway, Jr., Popham, Thompson, Popham, Trusty & Conway, Kansas City, for appellants.

Robert M. Fox, Claude M. McFarland, Kansas City, for respondent.

HUNTER, Presiding Judge.

This case arose out of an intersectional collision in Kansas City between an automobile driven by plaintiff's husband, Willie Dillenschneider, and a taxicab operated for defendants, Consolidated Cabs, Inc., and J. D. Williams, by defendant, Leonard Campbell.

The plaintiff, a sixty-two year old housewife, was a passenger in the right front seat of her sixty-six year old husband's 1957 Dodge automobile which was proceeding east on 42nd Street. The taxicab was proceeding in a northerly direction on Agnes Street. The two vehicles collided near and just east of the center of the intersection of the two streets, and plaintiff was injured.

The trial to the jury in which the plaintiff received a $2,500 verdict and judgment was not without difficulties. Both the plaintiff and her husband are deaf and dumb. The testimony of both was given through a sign language interpreter. Prior to this accident and until his stroke plaintiff's husband, although a deaf mute, had been gainfully employed, apparently able-bodied, and had been driving a car since 1920 without accident, according to the testimony. But he suffered a stroke after (and unrelated to) this accident and before the trial, leaving his memory impaired, and he was unable to recall many essential facts concerning the accident.

On this appeal defendants-appellants raise three contentions of error. We shall refer to the pertinent evidence as each contention is discussed.

First, defendants say their motion for a directed verdict at the close of plaintiff's case and at the close of all the evidence should have been granted because by plain-

tiff's own evidence that she was deaf and dumb and was actively assisting her deaf and dumb husband in driving their automobile, saw defendants' cab but failed to warn her husband of its presence, he not seeing it, convicts her of contributory negligence as a matter of law and bars her recovery.

■ By proceeding to put on their case after the trial court overruled their motion for a directed verdict at the close of plaintiff's case defendants waived their right to have that motion preserved for appellate review. However, defendants' motion for a directed verdict filed at the close of all the evidence is before us.

■ It is the rule that the determination of whether a party is guilty of contributory negligence ordinarily is for the jury as within its function unless it can be said from all the evidence and the reasonable inferences therefrom viewed in the light most favorable to that party that the only reasonable conclusion is that he was negligent and that his negligence was a proximate cause of the injury. Evidence and inferences favorable to the other party are disregarded in making the determination.

■ Also, in deciding the question of contributory negligence as a matter of law, the general rule is that the party charged with contributory negligence is bound by his own testimony and may not be aided by other testimony conflicting with his testimony or with his basic theory of the case. See, Carpenter v. Kessner, Mo.App., 330 S.W.2d 270.

In accordance with these basic and applicable principles we proceed to set out plaintiff's testimony and such other testimony as might properly aid her or explain the occurrence.

Plaintiff testified that she and her husband had been visiting the Fred Murphy home. They left about 4:50 in the afternoon to drive home. She estimated the general speed of the Dodge car as it approached the intersection of 42nd and Agnes Streets as "between 15 and 20 miles per hour."

"Q. Ask her if she saw this other car coming from the south before the impact. A. Yes.

"Q. Ask her if she has any estimate as to how far south from her this car was when she saw it first. A. Very close.

"Q. Does she have an estimate? A. About 20 to 25 feet.

"Q. At the time she saw it, did she see it long enough to make any estimate of its speed? A. Thirty.

"Q. * * * (ask her) where her car was in reference to the intersection when she first saw the car coming from the south. A. Almost to the middle of the intersection.

\* \* \* \* \* \*

"Q. Ask her if she has ever driven an automobile. A. No, doesn't know how." \* \* \*

"Q. Now, Mrs. Dillenschneider, when you rode with your husband you always rode in the front seat to help him, did you not? A. Yes.

"Q. And you watched out for him, didn't you? A. Yes.

"Q. Does she watch out to the right and to the left and ahead, or just to the right? A. All the way.

"Q. And when she sees something coming, what does she do? A. She nudges him.

"Q. Did she nudge him before this accident? A. It was too late." \* \* \*

"Q. When the front of their car was even with the west side of Agnes, did she see the cab at that time? A. No.

"Q. (From the west curb of Agnes, looking south) ask her if she could see a half block. A. About.

"Q. Did she see the cab in that half block space when she looked to the south? A. About 25 feet.

"Q. Ask her if she looked to the south as they entered the intersection. A. Yes.

"Q. Did she see the cab then? A. About 25 feet." She also had looked to the north.

"Q. Was she looking south continuously? A. All directions." * * *

"Q. Ask her if she didn't turn her head away right after she saw this taxicab coming. A. She did turn her head away because she was afraid.

"Q. How far did the taxicab travel while she was looking at it? A. Close to, about 20 feet.

"Q. Ask her if the taxicab traveled the distance of 20 feet while she was looking at it. A. Yes, and she looked away because she knew she would be hit and it was too late to warn her husband." * * * "He (taxi driver) went straight; he didn't slow down." There was nothing to obstruct her vision when she was 25 feet south from the intersection.

Indicative of the difficulty of the plaintiff understanding the questions as presented through the interpreter is: "Q. Mrs. Dillenschneider, were you mistaken, then, when you said a few minutes ago that you looked to the north for traffic before you got to the intersection? A. First I looked to the north and then to the south. She thinks she looked to the south first and not to the north. I believe my husband looked to the north. Q. Wasn't that the situation as they entered the intersection, that the husband was supposed to look one way and she was supposed to look the other? A. Yes."

Police Officer Jack Maxwell testified for plaintiff that defendant Campbell at the scene of the accident "stated he was northbound at approximately 20 miles an hour and that he saw the other vehicle too late to avoid; he saw it when he was six feet back of the point of impact. He was going 20 miles an hour at the time of impact." Officer Maxwell also testified that while the

intersection may be termed a blind one the range of vision is "possibly 60 feet", range of vision meaning that if Mr. Campbell had been 60 feet back and Mr. Dillenschneider 60 feet back they could have seen each other. There was an embankment approximately 5 or 6 feet high and a house on the southwest corner. There was evidence that 71 feet of skid marks laid down at the scene were the taxi's skid marks. Officer Maxwell described the skid marks and stated that approximately 20 to 25 feet were heavy skid marks and the rest of the skid was a very light skid.

Defendant Campbell testified that it was a "blind corner"; that when he was 25 feet (from) in the intersection and looked to the left he could see 25 feet.

He also stated he only saw the Dillenschneider car 6 feet from the point of intersection when he sounded his horn; that he was then going 20 miles per hour; that the intersection was approximately 26 feet wide and that it takes him approximately 40 feet to stop his taxicab when going 20 miles per hour; that the range of vision at that intersection is approximately 20 feet, i. e. equal distance from one street to the other.

■■ In this state the driver of a motor vehicle has the duty to exercise the highest degree of care. The standard of care is that of a normal man, and if the particular driver has physical handicaps that affect his driving these are factors to be taken into consideration along with the other facts in determining whether or not he was negligent in a given situation. No driver is permitted to successfully claim exemption from the consequences of an accident due to his actions while driving on the ground that his physical deficiencies handicapped him. The usual rule with regard to those who have impaired hearing, is that if licensed to drive, they have a right to drive in spite of the impaired hearing, but must use their other faculties and so drive as, in effect, to off-set the disability and conform to the standard of exercising the highest degree of care required of all drivers of motor vehicles.

■ In line with these principles plaintiff's husband is not to be held guilty of negligence as a matter of law simply because he was a deaf mute. See, 61 C.J.S. Motor Vehicles § 484a, p. 82; Atkinson v. Cardinal Stage Lines Co., 148 Kan. 244, 80 P.2d 1073; 28 A.L.R.2d 102(66). Nor is plaintiff to be held guilty of contributory negligence as a matter of law simply because she rode as a passenger in an automobile driven by a deaf-mute.

■ The general rule is that a guest-passenger in an automobile has a duty to exercise ordinary or reasonable care for his own safety, and is chargeable with contributory negligence which will bar his recovery if he fails to exercise such care and his failure contributes proximately to his injuries. As earlier indicated, ordinarily the question of the contributory negligence of a guest passenger in an automobile involved in a collision is for the jury to decide in the light of all the surrounding facts and circumstances. See, 5A Am.Jur., Automobiles and Highway Traffic, Section 1051, page 916. It is only where there is no reasonable doubt as to the facts and the inferences to be drawn from them and clear that reasonable minds could come to but one conclusion that the court should take the subject from the jury and rule it as a matter of law.

■ Taking the evidence in its most favorable light to the plaintiff we have concluded that plaintiff was not guilty of contributory negligence as a matter of law. See, Montgomery v. Petrus, Mo.App., 307 S.W.2d 24(4). Plaintiff was endeavoring to help her husband by watching for approaching traffic. She had the duty to exercise reasonable care under the circumstances to discover and warn the driver of obvious dangers. She saw the taxicab when it was 20 or 25 feet away traveling at a rate in excess of 30 miles per hour. She stated it was then too late to effectively warn her husband of its approach. At a 30 mile an hour speed the taxi would be traveling about 45 feet a second, leaving her about one-half second to convey an effective warning. Whether

she was negligent in not seeing the taxi sooner and in failing to give a warning under all the circumstances, some of which were unusual, presented a question peculiarly for the jury, and the defendants' instruction on that issue was given by the court.

■ Defendants next suggest that plaintiff's own evidence establishes "that she and her husband were returning to their home from a business trip when this accident occurred and that she was actively assisting her husband in driving the car by maintaining a lookout for him because of their physical infirmities. Therefore, the plaintiff and her husband were on a joint trip or enterprise, and the negligence, if any, of her husband was imputable to her; (and that) she had a duty to exercise the highest degree of care for her own safety", citing Mavrakos v. Mavrakos Candy Co., 359 Mo. 649, 223 S.W.2d 383.

There are numerous difficulties with this contention. The only evidence as to what "business" plaintiff and her husband were on was: "Q. Where had she and her husband been last before this accident occurred? A. Visiting the Fred Murphy home. Q. What was the purpose of visiting there? A. It was on business they were visiting there." Thus, there is no showing as to whose "business" or the nature of the business. It may have been the husband's business or that of Mr. Murphy. This evidence clearly does not establish joint venture as a matter of law. See 5A Am.Jur., Automobiles and Highway Traffic, Section 567, page 580; Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111. Defendants themselves apparently thought the evidence did not present a submissible jury issue of joint venture as they did not undertake to instruct on it. The Mavrakos case, supra, is not applicable, for in it there was evidence of a joint venture, and that issue was submitted to the jury. We find no merit in defendants' first contention.

The second contention of defendants as expressed in their brief is that the trial court erred "in allowing Officer Maxwell,

who admittedly was not an eye witness, to testify that the speed of defendants' taxicab was: (1) 30 miles per hour based upon the length of skid marks; and (2) 50 miles per hour based upon the length of skid marks and the amount of damage."

Officer Maxwell testified that he had been with the Kansas City Missouri Police Department "better than six years", and that he had been on (its) accident investigation unit "about three and a half years." On cross-examination, he testified he had "taken many different types of automobiles and laid down skids and measured their skids and figured the coefficient of friction from the skid marks." Several questions relating to speed were asked him and answered over objection. They are the questions that the trial court has been charged with having ruled erroneously.

"Q. Now, Officer, based upon the skid marks left by the Campbell vehicle and based upon your experience and knowledge as a police officer investigating accidents, can you tell the jury what the approximate speed of Mr. Campbell's vehicle was? (Objected to as) * * * calls for a conclusion on the part of this witness, no proper foundation having been laid * * * (Overruled) A. This 71 feet of skid marks, basing it on 50 percent coefficient of friction would indicate that the man was going at a minimum speed of 30 miles an hour. Q. Officer, does this mean at 30 miles an hour he would have stopped leaving this amount of skid marks? A. Yes, sir."

*    *    *    *    *    *

"Q. Basing that plus his own statement as to his speed at the time of the impact, which he gave to you at the scene of the accident, what would you estimate his speed to be? (Objected to for the reason that 'no proper foundation was laid') * * * A. The speed he was going at the moment of impact, which he estimated to me at 20 miles an hour, that would be added onto 30 miles an hour, which would make a total of 50 miles an hour." A motion that the answer

be stricken as "invading the province of the jury" was made and overruled.

▇▇▇▇ The first mentioned question does call for the expert opinion of the witness and in that sense is asking for a "conclusion". However, it is well settled that generally a properly qualified expert may give his opinion on matters within his speciality where required to aid the jury not deemed to possess such specialized knowledge. It is not to be given "unless it is clear that the jurors themselves are not capable, from want of experience or knowledge of the subject, to draw correct conclusions from the facts proved. * * * It is also well established that the admission or exclusion of expert opinion testimony is a matter largely within the discretion of the trial court and the exercise of that discretion will not be interfered with unless it plainly appears that such has been abused." Superior Ice & Coal Co. v. Belger Cartage Service, Inc., Mo.Sup., 337 S.W.2d 897, 906(8).

As illuminated in their briefs defendants' position seems to be that it is improper to permit an expert to give an opinion as to speed based on skid marks. They rely upon such cases as Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, 249 and others concerning expert testimony as to the point of impact of two vehicles primarily determined from the resultant debris. The Conger case held the giving of that opinion evidence "invaded the province of the jury", and thus was not a proper subject for expert or opinion evidence—an objection not here made to the first question but was made to the second question. As mentioned in the later case of Stutte v. Brodtrick, Mo.Sup., 259 S.W.2d 820, 824, also cited by defendants, " * * * Determination of high speed from skid marks and the condition of the wrecked car, by one who has had training and experience in such matters, is at least a different proposition * * *." While we have found no case in this state passing directly on the question [1] certainly the general weight of

1. Testimony descriptive of skid marks has been held to be pertinent and admissible evidence as bearing on the speed of the motor vehicle at the time of the

authority in this country recognizes that a witness qualified as an expert may give his opinion, based upon the length of skid marks and other pertinent data as to the minimum speed at the time the brakes were applied of a motor vehicle involved in an accident. See, Annotations, Evidence—Tire Tracks or Marks, 23 A.L.R.2d 141, Sec. 15; 156 A.L.R. 382, 383; 92 A.L.R. 479(2); 70 A.L.R. 544, 545.

Illustrative is the early case of Fannon v. Morton, 228 Ill.App. 415, where the evidence was that the car wheels were locked. Evidence by an expert was held admissible as to the estimated speed of the automobile predicated upon the distance the tires were dragged along the pavement. In Saladow v. Keystone Transportation Co., 241 App. Div. 161, 271 N.Y.S. 293, it was held to be error to exclude testimony of an expert in the police department to establish that a taxi with brakes applied could not have produced brake marks 60 feet in length unless it was exceeding the maximum rate allowed by law.

Expert opinion evidence of minimum speed based upon the length of skid marks of an automobile and with brakes applied stopped thereby is in a sense but the corollary of expert testimony as to the distance within which a motor vehicle can be stopped if going at a speed of x miles per hour. This latter type of opinion evidence, properly presented by an expert, is generally held admissible. See, Christian v. Jeter, Mo. Sup., 287 S.W.2d 768(1); 9c Blashfield, Automobile Law, Page 414, Sec. 6237, N. 75; Brockman v. Robinson, Mo.App., 48 S.W.2d 128(3); 32 C.J.S. Evidence § 533b, note 86, p. 237. See, also, cases collected Mo. Digest, Evidence ⟜ 539½ (2).

■ Based upon what to us appears to be the weight of these reasoned authorities we conclude that the determination of minimum speed from skid marks, if other objections are met, is a proper subject for expert

accident. Bear v. Devore, Mo.App., 176 S.W.2d 862; 23 A.L.R.2d 125(7). And see, dicta, Maul v. Filimon, Mo.App., 315

or opinion evidence. In so saying we do not pass on whether opinion evidence as to speed based on the appearance or condition of the automobiles after the accident is a proper subject for expert evidence for that precise question is not before us. See, Annotation, 133 A.L.R. 726.

■ Passing to defendants' second objection to the first set out question ("no proper foundation") we are left without further aid by the briefs as to the precise reason for the objection. If defendants mean that Officer Maxwell's qualification as an expert was insufficient we agree that it was tersely stated, and well could have been given in more detail. The general rule is that the omission to lay a proper foundation for expert or opinion evidence upon the examination in chief if it be supplied by evidence drawn out on cross-examination results in the error in admitting it being cured. See, 32 C.J.S. Evidence § 458a, p. 98, note 67; Crich v. Williamsburg City Fire Ins. Co., 45 Minn. 441, 48 N.W. 198(3); Tifton Brick & Block Co. v. Meadow, 92 Ga.App. 328, 88 S.E.2d 569(3); Cf. Frick v. Kansas City, 117 Mo.App. 488, 93 S.W. 351, 353(1). Taking into consideration the testimony of Officer Maxwell including his cross-examination; and giving to the trial court the right to exercise its sound discretion in the matter, we are unconvinced that Officer Maxwell's qualification as an expert was so insufficiently stated as to result in an abuse of discretion by the trial court in permitting the mentioned testimony.

In their briefs defendants do not charge that Officer Maxwell did not sufficiently detail the pertinent facts upon which he based his expert opinion. We, therefore, do not rule on that question. In passing, we note he did testify he examined both automobiles after the collision, examined the roadbed and all skid marks, and generally examined the scene. In his testimony he did give some details on these matters.

S.W.2d 859, 865, "skid * * * or the force of the impact as evidenced by the damage done * * *."

Defendants' final charge of prejudicial error is based on the following trial court ruling: After defendant Campbell stated on cross-examination that one month after the accident he had stopped working for J. D. Williams and the Consolidated Cab Company he was asked: "Q. What was the reason for your leaving the cab company at that time? (Defendants' attorney) I object to that as immaterial, Your Honor. (Overruled) A. Because of the accident. The Court: How is that? Speak up, the jury can't hear you. A. Because the safety responsibility unit, they had taken up my license. I didn't have liability coverage and I didn't have a license. Q. They let you go because you didn't have a license to drive a car, is that right? A. Yes."

At the close of the trial at defendants' request the court gave the following withdrawal instruction: "The Court instructs the jury that the fact defendant Leonard Campbell lost his driver's license as a result of the collision mentioned in evidence is no evidence whatsoever of negligence and should not be considered by you in determining your verdict."

 The elicited testimony was immaterial to any issue in the case and the trial court erred in overruling defendants' objection to it. However, to permit the granting of a new trial the ruling must result in prejudicial error which materially affects the merits of the cause. Appellant courts may not reverse a judgment because of nonprejudicial error. See, Civil Rule 83.13(b), V.A.M.R. It is apparent from the objected to questions and answers and the withdrawal instruction that the jury as reasonable persons must have understood that defendant Campbell lost his driver's license because he did not carry liability insurance required by the state of one involved in a motor vehicle accident, and that his loss of his driving license was not any evidence of negligence on his part in the collision. The fact that defendant Campbell told the jury that he did not have insurance would not result in prejudice to him. As ordinarily understood a revelation of no insurance in the trial of a personal injury suit involving an automobile collision is tantamount to a plea of poverty, and whatever prejudice may result does not result to him who asserts he has no insurance coverage. See, Wallace v. Whitzel, Mo.App., 324 S.W.2d 157(8). Since no appellate court may reverse any judgment, unless it believes that error was committed by the trial court against the appellant, and materially affecting the cause of action we rule defendants' final contention against them. We have examined all of the cases cited by defendants and find nothing in them contrary to the views we have expressed.

The judgment is affirmed.

All concur.