GRAY, A MINOR *v.* TURNER

No. 42406          October 15, 1962          145 So. 2d 470

*Harty & Kimble, Ernest Kellner,* Greenville, for appellant.

*Keady, Campbell & DeLong,* Greenville, for appellee.

ETHRIDGE, J.

Mary Ethel Gray, a minor, the appellant, brought this action by next friend in the Circuit Court of Washington County, against Patricia Felts Turner, for personal injuries caused by Mrs. Turner driving her car into plaintiff, who was crossing a street. in the City of Greenville. The jury returned a verdict for defendant.

This was the second trial of this case. On the first, a jury verdict for Mrs. Turner (formerly Felts) was reversed and the cause remanded for a new trial. Gray v. Felts, 241 Miss. 599, 131 So. 2d 454 (1961). Although it was said that the jury could find Mrs. Turner had a green light at the intersection, this did not relieve her of the duty to keep a lookout for pedestrians using the crosswalk, and to maintain control of her vehicle; that Mary Ethel (then 12 years of age) had crossed from the north to near the south side of the street, as Mrs. Turner approached, yet defendant admitted she did not see the child and did not know of her presence until she felt a thud against her car; that if Mrs. Turner had been keeping a lookout, she necessarily would have seen

Mary Ethel as the latter traveled nearly the entire width of the street; and a finding to the contrary was against the great weight of the evidence.

▇▇ ▇ We refer to the statement of facts on the first appeal. Gray v. Felts, *supra*. We have carefully considered the record on the second trial, and again conclude that the verdict of the jury is against the overwhelming weight of the evidence. On the second, certain additional factors were developed, but they are not of adequate significance to change our conclusion that a verdict for the defendant is against the overwhelming weight of the evidence.

On the second trial, Main Street was shown to be 40 feet wide, with parallel parking lanes on the north and south sides of 7-8 feet. There was a car parked on the north side of the street, in front of the hotel, 6-7 feet west of the crosswalk. Mrs. Guice, the passenger in defendant's car, thought there was parked cars on the south side. Accepting this testimony, there was still left, after deducting the area occupied by parked vehicles, an open street area of 24-26 feet.

The accident happened around dusk on November 28, 1957. Mrs. Turner was driving east on Main Street approaching the intersection of Theobald Street, which runs north and south, and at which there was a changing traffic light. As on the first trial, the jury could find she had a green light. She said she was driving about 20 miles per hour, more or less. She again frankly said, "I didn't really see anything until I hit the child as far as anything unusual." She was looking east. The first impression was a "movement in front my car; it seemed to be a movement going from north to south; it could have been from south to north, I don't know ... It was a jerky movement; it was quick, it was just there and at the same time I slammed my brakes on." She said she was looking ahead, but did not see anything

until right before she hit Mary Ethel. Her skid-marks began 15 feet west of the crosswalk.

Mrs. Guice, who was riding on the front seat, said the first thing she remembered was Mrs. Turner saying, ''Did I hit something?'' Mrs. Guice then looked out the window and saw a child's body on the street. Both she and Mrs. Turner said that the latter immediately put on the brakes (15 feet west of the passenger crosswalk), and subsequently let up on them and pulled to the right near the curb. However, two police officers testified there were 120 feet of skid-marks. On the second trial, defendant's counsel sought to minimize the effect of this testimony, by developing from them that, at a certain point in the tire marks, there appeared to be a change in their nature, being narrower.

In summary, on the second trial, as in the first, it is undisputed that defendant, although claiming to keep a lookout ahead, never saw Mary Ethel until the child had traversed, from north to south, almost the entire width of the street. She hit the child near the right front of the car. A finding by the jury that Mrs. Turner was keeping a lookout is against the overwhelming weight of the evidence. The great weight of the evidence further indicates again that Mrs. Turner was driving at a greater rate of speed than would permit her to avoid injury to persons when they came within the range of her lights. Apparently Mrs. Turner applied her brakes, starting the skid-marks, and then, at some unlocated point in the 120 feet of skid-marks, reduced the brake pressure, then reapplied it. This would not warrant a jury finding that there was not 120 feet of skid-marks. It is wholly unreasonable that a car going approximately 20 miles an hour would leave 120 feet of them. Mrs. Turner must have been traveling considerably in excess of that speed. Hence, the great weight of the evidence on the issues of both lookout and speed contradicts the jury's verdict.

■■ Although the court's power to set aside a jury verdict and grant a new trial should be exercised with caution, this Court has the duty to review the evidence and cancel the verdict if it is against the overwhelming weight of the evidence. This is a necessary incident to the right of trial by jury. Williams v. Hood, 237 Miss. 355, 114 So. 2d 854 (1959). Somewhat analogous to the instant case is Robertson v. Welch, 242 Miss. 110, 134 So. 2d 491 (1961). As observed there, a person is presumed to see what he should have seen. It is incredible that defendant would not have seen plaintiff running almost all the way across the street, if she had been keeping a lookout, had her car under control, and was exercising reasonable care.

■■ It was also error for the trial court to grant defendant's instruction No. 7, stating that, if the jury believed Mary Ethel had sufficient intelligence and judgment, and failed to exercise it as an ordinarily prudent child would use for her own safety when crossing the street, and if this negligence of plaintiff was the sole, proximate cause of the accident, the jury should find for defendant. In view of Mrs. Turner's failure to see the child, under the circumstances, and the physical facts as to the skid-marks, the jury should not have been permitted to find that the negligence of appellant was the sole, proximate cause of her injuries. According to Mrs. Turner's own testimony, she was not keeping a lookout. Frazier v. Hull, 157 Miss. 303, 127 So. 775 (1930).

■■ It was not error for the trial court to sustain defendant's objection to the testimony of Police Captain O'Brien. He was asked to give his estimate of the vehicle's speed with skid-marks of 120 feet. His testimony would have been based solely on a mathematical chart furnished him at a police academy. O'Brien had no personal knowledge of the mathematical or physical factors involved. The chart was hearsay. Breshears

v. Myers, 266 S. W. 2d 638 (Mo. 1954); Lemons v. Holland, 205 Ore. 163, 286 P. 2d 656 (1955). This witness did not qualify himself as an expert on this issue, and there was not shown any similarity of experimental data upon which the witness relied. See 5A Am. Jur., Automobiles and Highway Traffic, Secs. 964, 997; Anno., 23 A. L. R. 2d 112 (1952). Cf. exclusion of testimony as to point of impact, Standard Oil Company v. Crane, 199 Miss. 69, 23 So. 2d 297 (1945); Delta Chevrolet Company v. Waid, 211 Miss. 256, 51 So. 2d 443 (1951); Anno., 66 A. L. R. 2d 1048 (1959).

Reversed and remanded.

*Lee, P. J., and Kyle, Rodgers and Jones, JJ.,* concur.