Celestino BERNAL, Appellee,

v.

Roger Eugene BERNHARDT, Appellant.

No. 53865.

Supreme Court of Iowa.

Oct. 13, 1970.

Westfall, Laird, Burington, Bovard & Heiny, Mason City, for appellant.

Fitzgibbons & Fitzgibbons, Estherville, for appellee.

STUART, Justice.

A pedestrian who was struck by defendant's automobile as he was crossing State Highway 9 in a 45 mile per hour zone in the town of Thompson brought this action to recover damages for the resulting personal injuries. The jury returned a defendant's verdict. The trial judge sustained plaintiff's motion for new trial on the ground that he erred in admitting the testimony of the highway patrolman as to the speed of the vehicle at the time the brakes were applied from the skidmarks because the patrolman "did not possess the required qualifications of an expert in this area, nor did he consider essential factors necessary to express the opinion as to the speed of defendant's vehicle", citing Hedges v. Conder (1969, Iowa), 166 N.W. 2d 844; Hardwick v. Bublitz (1963), 254 Iowa 1253, 119 N.W.2d 886, and Kale v. Douthitt (1960, 4 CA), 274 F.2d 476. The trial court ruled against plaintiff on all other grounds urged. Therefore, the only question before us here is whether the trial court abused its discretion during the trial when it permitted the highway patrolman to express an opinion as to the speed of defendant's vehicle from the skidmarks.

I. In recent years legal writers have given considerable attention to the use of opinion evidence for the reconstruction of automobile accidents generally and the determination of speed from skidmarks specifically. Anno. 29 A.L.R.3rd 248; 23 A. L.R.2d 112, 141; 10 Am.Jur., Proof of Facts, 137 et seq., 673 et seq.; Lacy, Automobile Accident Cases, Scientific Reconstruction, chapter 6; Opinion Evidence in Iowa, Hon. Mark McCormick, 19 Drake L.Rev. 245; Reconstruction of Automobile Accidents Through Lay and Scientific Testimony, Schoone and Schapiro, 47 Marquette L.Rev. 491; 53 Iowa L.Rev. 421; 48 Iowa L.Rev. 1055.

We permit expert testimony when such testimony would be of assistance to the trier of facts. Schmitt v. Jenkins Truck Lines, Inc. (1969, Iowa), 170 N.W. 2d 632, 651. Our recent cases have recognized that the field of accident reconstruction is a proper subject of expert testimony. Karr v. Samuelson, Inc. (1970, Iowa),

176 N.W.2d 204, 209; Dougherty v. Boyken (1968), 261 Iowa 602, 611, 155 N.W.2d 488, 493.

We have permitted investigating officers to express opinions on some matters disclosed by their investigation when properly qualified. Robeson v. Dilts (1969, Iowa), 170 N.W.2d 408, 413; Schmitt v. Jenkins Truck Lines, Inc., supra; Dougherty v. Boyken, supra; Lessenhop v. Norton (1967), 261 Iowa 44, 55–56, 153 N.W.2d 107, 114; Mickelson v. Forney (1966), 259 Iowa 91, 143 N.W.2d 390; Brower v. Quick (1958), 249 Iowa 569, 577, 88 N.W. 2d 120, 124–125.

■ Although we have repeatedly stated we are committed to the liberal rule that the admission of expert testimony rests largely within the discretion of the trial court, Tiemeyer v. McIntosh (1970, Iowa), 176 N.W.2d 819, 824; Karr v. Samuelson, Inc., supra; Robeson v. Dilts, supra; Dougherty v. Boyken, supra, the discretion ceases when the record shows as a matter of law that the witness is not qualified or the facts upon which the opinion is based are not sufficiently stated by the witness. Hedges v. Conder (1969, Iowa), 166 N.W. 2d 844, 857–858. We affirm the granting of a new trial as the record shows the witness was not properly qualified to express an opinion as to speed and failed to state a sufficient factual basis for his opinion.

II. Patrolman James Lind investigated the accident. He observed two skidmarks on defendant's side of the center line running to the front wheels of defendant's car. They were 94 feet long.

The evidence disclosed Lind had been with the Iowa Highway Patrol about 11½ years at the time of trial. Every year he attends police science courses at the University of Northern Iowa conducted by Dr. Holcomb, head of the police sciences at the University of Iowa. Instructors from other schools are used including some from the Northwestern Institute of Science. He also graduated from the accident investigation course at the University of Iowa.

Part of the instruction relates to the determination of the speed of a car by the length of skidmarks from charts furnished by the highway patrol. The highway patrol regularly sends out bulletins containing the latest information connected with accident prevention and cause. The last school he attended that dealt with skidmarks was at the University of Iowa in 1966.

Patrolman Lind had investigated 10 to 15 accidents a month during his 11½ years on the patrol and reported them to the state. Part of his job was to reach conclusions as to the speed of the vehicles involved in the accidents. He has made tests with pickup trucks and passenger cars by driving them at different known speeds, skidding the tires by applying the brakes, measuring the skidmarks and comparing them with the charts. He also has made such tests at the scene of an accident using the vehicles involved.

With this foundation, he was then asked: "Now I will ask you Patrolman Lind if as a result of the training you have had as you have related to me today and yesterday, if as a result of your experience in investigating accidents and if as a result of going to the scene of the accident involved in this litigation, observing and measuring the skidmarks, observing the Bernhardt vehicle, its tires, its size and everything about it, observing the pavement, the grade and the topography and all of the physical things and physical facts that existed out there, if you can estimate with a reasonable degree of accuracy the approximate speed that the Bernhardt car was going at the time it applied its brakes and the skidmarks commenced?"

It was ascertained on voir dire that Patrolman Lind did not know the exact weight of the vehicle or the type of tires it had. He had noticed the highway was running slightly uphill at the scene of the accident which would cause the car to stop in a shorter distance. He was familiar with studies of the coefficient of friction of the tires against the paving but did not apply them in this case. He testified: "I

don't think the surface of the tire or the weight of the vehicle will make hardly any difference, there would be a little difference, but not enough to bother the estimation."

The court then permitted the witness to testify over objection that defendant's car was traveling between 38 and 44 miles per hour at the time the skidmarks commenced.

III. In this case we are dealing with the relatively simple factual situation where defendant's car skidded to a stop without colliding with an object offering substantial resistance and left straight unbroken skidmarks of equal length on concrete paving. Defendant attempted to qualify the witness to estimate the speed from the skidmark on the basis of training and experience, rather than to qualify him to make a scientific calculation of the speed from a recognized formula. It is possible to qualify an investigating officer to estimate the approximate speed of an automobile from the skidmarks in this manner. It is common knowledge highway patrolmen conduct tests and give demonstrations designed to show stopping and braking distances at given speeds under certain conditions.

The courts and legal writers have recognized that investigating officers may be qualified to express an opinion as to speed from skidmarks left by a car braking to a stop without meeting substantial resistance.

"In instances where skidmarks are the only basis for calculation of minimum speed and there is no added problem of impact upon collision, police officers generally qualify as expert witnesses since the calculations require relatively little formal training but are still not within the common knowledge of the average juror. Extensive tests have produced an easily applied formula, utilizing only the measured skid distance at the scene of the accident and the coefficient of friction between the vehicle tires and the roadway surface, which gives an estimate of minimum speed

in the simple one-car skidmark cases accurate to within approximately 10 miles per hour. To aid in these determinations, nomographs have been compiled for obtaining minimum speeds when the skidding distance and coefficient of friction are known, thereby eliminating the need for any mathematical calculations on the part of the police officer. * * *

"When a collision occurs, however, the problem of estimating the speed of a vehicle mathematically is infinitely more complex. In such instances a portion of each vehicle's momentum is consumed in damaging or moving the other vehicle or object involved in the accident. The calculation of the impact velocity, therefore, requires a highly refined knowledge of kinetics, vector analysis, and strength of materials. Accordingly, the expertise required of the expert witness is correspondingly greater." 48 Iowa Law Review, pages 1058–1059.

In the following cases the court approved of the testimony of an investigating officer in which he expressed an opinion as to the speed of a vehicle which left skidmarks of a stated length in coming to a stop. Some of the cases involve collisions with pedestrians or bicycles. In others the question sought the minimum speed of the vehicle prior to a vehicular collision by eliciting the speed at which a vehicle would have to travel to leave skidmarks of a stated length and stop at the point of impact. They all involve assumptions of fact similar to the evidence in this case. Jackson v. Vaughn (1920), 204 Ala. 543, 86 So. 469; Rouse v. Fussell (1962), 106 Ga.App. 259, 126 S.E.2d 830, 833; Edwards v. Rudowicz (1963, Mo.App.), 368 S.W.2d 503, 507; Dillenschneider v. Campbell (1961, Mo.App.), 350 S.W.2d 260, 267; Wood v. Ezell (1961, Mo.App.), 342 S.W.2d 503, 507; Graham v. Rolandson (1967), 150 Mont. 320, 435 P.2d 263, 270–271; Nisi v. Checker Cab Co. (1960), 171 Neb. 49, 105 N.W.2d 523, 527, 529; Tate v. Borgman (1958), 167 Neb. 299, 92 N.W.2d 697; Davis v. Zucker (1951, Ohio App.), 106 N.E.2d 169, 172; Ruther v. Tyra (1952),

207 Okl. 112, 247 P.2d 964, 966; Thomas v. Harper (1964), 53 Tenn.App. 549, 385 S.W.2d 130, 136–137; Billingsley v. Southern Pacific Co. (1966, Tex.Civ.App.), 400 S.W.2d 789, 793. See also Huguley v. State (1957), 39 Ala.App. 104, 96 So.2d 315, 318.

But see: Ransom v. Weisharr (1963, Ark.), 370 S.W.2d 598, 600; Ungefug v. D'Ambrosia (1967), 250 Cal.App.2d 61, 58 Cal.Rptr. 223, 226; B–Line Cab Co. v. Hampton (1952, Ky.), 247 S.W.2d 34, 35; Grapentin v. Harvey (1962), 262 Minn. 222, 114 N.W.2d 578, 582; Gray v. Turner (1962), 245 Miss. 65, 145 So.2d 470, 472.

We recognize police officers may be qualified by experience and training to estimate the speed of a vehicle at the time skidmarks commence when the vehicle skids to a stop without substantial impact even though they do not use the mathematical formula.

■ However, as legal writers in the field of accident reconstruction recognize dryness, smoothness and cleanness of the road surfaces, the kind of tread, condition of wear and inflation of the tires, the weight of the vehicle and percent of grade of the highway are important variables which affect stopping distance and must be considered by a witness asked to make an exact calculation of speed from a mathematical formula, Hedges v. Conder, supra, the foundation laid to qualify an officer by occupational training to express such opinion must show whether he knew and considered these variables. If he did not know or consider some of them, he must relate the details of his training, experience and experimentation which justify him in disregarding the factors ignored.

■ It might be possible for a witness to make a reasonable estimate as to speed based on skidmarks without considering the variables suggested, but the record here fails to show that Lind had experience testing vehicles of different weights, with tires in different conditions on pavement in different condition and varying grades.

Only if he showed such experience or its equivalent could he justifiably disregard all of the variables and still arrive at a reasonably accurate estimate.

We hold that Officer Lind has failed to show he possessed sufficient expertise in the specific area in which he was asked to express an opinion and therefore was not qualified to express his opinion.

IV. Even if a proper foundation had been laid to qualify Lind as an occupational expert, he failed to state a sufficient factual basis for the opinion expressed.

■ Before a witness who has been qualified as an expert in the pertinent field can express his opinion on the particular issues involved, whether he is testifying in whole or in part from his personal knowledge and observation or in response to a hypothetical question, the facts upon which the opinion is based must be stated by the witness or in the hypothetical question. From this evidence the court, in the first instance, can determine whether the factual foundation is sufficient for a valid opinion or the answer would be nothing more than mere conjecture or guess, and the trier of fact, in the last instance can determine whether the alleged facts justify his conclusion. The acceptance or rejection of opinion testimony does not depend upon the expert's abstract qualifications alone. Tiemeyer v. McIntosh (1970, Iowa), 176 N.W.2d 819, 824; Karr v. Samuelson, Inc. (1970, Iowa), 176 N.W.2d 204, 209; Hedges v. Conder (1969, Iowa), 166 N.W.2d 844, 857; Dougherty v. Boyken (1968), 261 Iowa 602, 611–615, 155 N.W.2d 488, 493–495; Lessenhop v. Norton (1967), 261 Iowa 44, 55–56, 153 N.W.2d 107, 114; Kale v. Douthitt (1960, 4 CA), 274 F.2d 476, 482; Huguley v. State (1957), 39 Ala.App. 104, 96 So.2d 315, 317–318; Deaver v. Hickox (1967), 81 Ill. App.2d 79, 224 N.E.2d 468, 471–472; Flory v. Holtz (1964), 176 Neb. 531, 126 N.W.2d 686, 691–692.

■ The record shows Lind measured the 94 foot skidmarks on the paved high-

way, knew the grade was slightly uphill but did not know the condition of the tires or the weight of the vehicle. He did not say whether he took the grade into consideration. He expressed the opinion that the condition of the tires or the weight of the vehicle would not make enough difference to "bother the estimate". As pointed out in the previous division he did not show his training and experience were sufficient to provide a foundation for such opinion.

The record is silent on whether the paving was wet or dry, rough or smooth, clean or littered with dirt and rock from the nearby entrances to the highway. He did not say whether or not he considered these factors and did not state his estimate would not have been affected thereby.

Therefore, even if Officer Lind knew as a result of his investigation all the conditions which existed at the time and the place of the accident, and based his opinion upon these observations, as suggested in the question soliciting his opinion, he failed to state such factual basis before expressing his opinion, as required by the above cited cases.

V. Defendant also argues any error in admitting the patrolman's testimony was nonprejudicial. We cannot agree. The accident happened in a 45 mile per hour zone. Testimony which placed defendant's speed at less than the posted limit tended to disprove one specification of negligence. We cannot say such evidence had no effect on the jury's verdict.

We hold the trial court was correct in granting plaintiff a new trial for the erroneous admission of Officer Lind's testimony as to the speed of the vehicle when the skidmarks commenced.

VI. Plaintiff's claim that the trial court erred in failing to give his first requested instruction is without merit for the reasons stated by the trial court in his ruling on plaintiff's motion for new trial.

The trial court is affirmed and the case is remanded for further proceedings.

Affirmed and remanded.

MOORE, C. J., and REES and UHLENHOPP, JJ., concur.

RAWLINGS, BECKER and LeGRAND, JJ., concur specially.

LARSON, J., dissents.

MASON, J., takes no part.

RAWLINGS, Justice (concurring specially).

I concur in Division III of the majority opinion, and the result, but am unable to agree with the conclusion reached by the majority to the effect Officer Lind lacked sufficient expertise and was therefore not qualified to express an opinion.

It appears to me this witness did qualify as an expert, but here failed to establish a sufficient factual basis for the introduction in evidence of that opinion.

BECKER and LeGRAND, JJ., join in this special concurrence.

LARSON, Justice.

I respectfully dissent. In my opinion the trial court erred in granting a new trial for I feel the testimony of Officer Lind was properly admitted as evidence that could be legally helpful to the jury.

I believe that the officer was properly qualified as an expert and that a substantial and sufficient basis for the expression of his opinion does appear. It is unnecessary to show him an expert in *all methods* of determining speed from skid marks and it need not appear that he considered all of them in order to express his opinion here.

The majority seems to assume that the engineering formula set out in Hedges v. Conder, Iowa, 166 N.W.2d 844, is the only method of determining the speed of the car from observing the skid marks it left on the pavement.

While that formula may be correct and is usually accepted by courts of law as a proper means of measuring speed, the majority apparently forgets that we also held in Hedges v. Conder, supra, that occupational training plus years of practical experience have likewise been established as a valid basis upon which an expert opinion may be based. In that case, in addition to mentioning the accepted formula, we also quoted with approval from McCormick on Evidence, § 13, as follows: "To warrant the use of expert testimony, * * * two elements are required. First, the subject of the inference must be so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman, and second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth. The knowledge may in some fields be derived from reading alone, in some from practice alone, or as is more commonly the case, from both."

Officer Lind's background clearly shows that he qualified under this rule by both study and occupational experience to render an opinion that would be helpful to the jury. The record shows that he has attended several schools of traffic safety, that he has conducted skidding experiments on his own at different accident sites, and that he has investigated accidents of this type during the course of his work at a rate of 10 to 15 times a month for 11½ years. He even made tests at the scene of some accidents using the vehicles involved. With the aid of other officers tests were made with different models of passenger cars and trucks, and measurements were made after brakes were applied at different known speeds. He testified he had observed the topography of the highway in this case and compared it with other known situations involving a slight uphill grade. He further stated he observed the condition of the road surface, that he was familiar with the coefficient of friction and knew this factor was used by some experts to determine speed, but that in this case he did not find it too helpful and did not consider it here.

The majority seems to hold, because he did not know the exact weight of the vehicle here or the type of tires it had, and did not think the surface of the tires or the vehicle's weight made much difference under these circumstances, this disqualified his opinion. I strongly disagree.

I do not think under such a showing that we should disqualify his opinion and hold that only opinions based upon academic expertise may be heard by the jury, as the majority appears to indicate. The purpose of expert testimony is to aid the jury by setting before it information not available to the average layman. Dougherty v. Boyken, 261 Iowa 602, 155 N.W.2d 488; Brower v. Quick, 249 Iowa 569, 88 N.W.2d 120; Brandt v. Richter, Iowa, 159 N.W.2d 471. It should be admitted when it seems reasonably capable of helping the jury, and not excluded merely because the expert failed to recite analytical elements found useful by other experts in the field.

It may be that the majority is concerned with the possibility that in this or future cases a jury will be overly-impressed by the testimony of someone such as Officer Lind who is clothed with public authority. To this it is sufficient to state that expert testimony is subject to the testing and scrutiny of cross-examination, which may or may not affect its credibility. In the case at bar opposing counsel pointed out in cross-examination that other experts in the field relied upon the variables that Officer Lind said were not helpful to him and that he did not use. The jury thus had called to its attention the elements of two acceptable methods of accident analysis and could properly decide what weight to give

to the opinion of this officer. This is a proper jury function.

Because I believe that Officer Lind's opinion was of sufficient aid to the jury in determining the speed here, and because I do not feel only academic or technically-qualified persons should be allowed to render opinions on such questions, I would reverse the trial court's grant of a new trial herein and let the verdict stand.